**Dolores ESQUIVEL and Carlos Esquivel, Appellants,**

v.

**EL PASO HEALTHCARE SYSTEMS, LTD. d/b/a Las Palmas Medical Center and Del Sol Rehabilitation Hospital, Appellees.**

No. 08–04–00300–CV.

Court of Appeals of Texas, El Paso.

Aug. 25, 2005.

J. Morgan Broaddus III, Gordon & Mott P.C., El Paso, for Appellants.

Gary Allen Norton, Scott, Hulse, Marshall, Feuille, Finger & Thurmond, El

Paso, Michelle E. Robberson, Cooper & Scully, Dallas, for Appellee.

Before BARAJAS, C.J., McCLURE, and CHEW, JJ.

## OPINION

ANN CRAWFORD McCLURE, Justice.

Dolores Esquivel and Carlos Esquivel appeal from an order dismissing with prejudice their medical malpractice suit against El Paso Healthcare System Ltd. d/b/a Las Palmas Medical Center (Las Palmas) and Del Sol Rehabilitation Hospital (Del Sol). We affirm.

## FACTUAL SUMMARY

Sixty-four year old Dolores Esquivel was admitted to Las Palmas on February 13, 2003 for treatment of uncontrollable hypertension and renal disease. She also had other medical problems, including diabetes and cardio-circulatory difficulties, and her mobility was limited. She underwent surgery and was transferred to Del Sol on February 25, 2003. Mrs. Esquivel developed multiple decubitus ulcers which necessitated her transfer from Del Sol to Las Palmas on March 13, 2003, for surgery.

The Esquivels filed suit alleging that Mrs. Esquivel received sub-standard medical and nursing care at Las Palmas and Del Sol, and as a result, Mrs. Esquivel suffered the decubitus ulcers which required surgery and resulted in her complete loss of mobility. More specifically, the pleadings allege that defendants: failed to secure a correct medical history; failed to address Mrs. Esquivel's medical condition; failed to develop a plan of suitable medical care; failed to provide proper medical care; failed to provide proper supervision of Mrs. Esquivel's condition; failed to provide proper medical intervention to prevent the formation of bedsores; and failed to provide proper medical care to prevent the progression and development of the bedsores. The pleadings also alleged negligence *per se* based on the nurses' alleged violation of Section 217.11 of the Professional Nursing Standards.

Pursuant to the requirements of the Medical Liability and Insurance Improvement Act (MLIIA),[1] the Esquivels provided both defendants with an expert report by Mary Helen M. Castillo, Ph.D., R.N., F.A.A.N. Based on her review of the records, Dr. Castillo concluded that no documentation was made of skin breakdown or decubitus ulcers at the time Mrs. Esquivel was admitted to Las Palmas. She was at risk for these conditions given her medical diagnoses and immobility. While at Del Sol, Mrs. Esquivel regained levels of mobility before her decubitus ulcers worsened to Stage IV. Due to the decubitus ulcers developing to Stage IV and her subsequent surgery, Mrs. Esquivel lost her mobility. Dr. Castillo stated that she was familiar with the standard of care for skin care and prevention of decubitus ulcers as well as documentation, observation, assessment, and intervention required to meet that standard, and that the standard was not met in this case. Based on her review of

1. When the Esquivels filed their case, health care liability claims were subject to the provisions of Tex.Rev.Civ.Stat.Ann. art. 4590i, § 13.01. Act of May 30, 1977, 65th Leg., R.S., ch. 817, §§ 1.01–12.01, 1977 Tex.Gen.Laws 2039–53, repealed by Act of June 2, 2003, 78th Leg., R.S., ch. 204, § 10.09, 2003 Tex. Gen.Laws 884. The current version is found at Tex.Civ.Prac. & Rem.Code Ann. § 74.351 (Vernon 2005). Act of June 2, 2003, 78th Leg. R.S., ch. 204, § 10.01, 2003 Tex.Gen. Laws 864 (effective date September 1, 2003). Because the Esquivels filed suit prior to the effective date of the new Act, we will refer to the repealed law.

the records, Dr. Castillo reached the professional opinion that the nursing staffs at Las Palmas and Del Sol failed to use proper care to assure that Mrs. Esquivel received the basic nursing care she needed and both nursing staffs failed to observe and document skin integrity and breakdown of tissue which contributed to skin deterioration and formation of decubitus ulcers.

Las Palmas and Del Sol moved to dismiss the Esquivels' suit because Dr. Castillo's report did not provide a fair summary of Dr. Castillo's opinions regarding the applicable standard of care and the causal relationship between the breach of this standard and her injuries. Additionally, both motions claimed that Dr. Castillo, whose doctorate is in education, was not qualified to render a medical diagnosis, and therefore, she was not qualified to render an expert opinion as to the cause of Stage IV decubitus ulcers. Following a hearing, the trial court granted the motions to dismiss. The Esquivels filed a motion for new trial alleging, among other things, that the trial court judge had a conflict of interest which required recusal. The motion for new trial was overruled by operation of law.

## RECUSAL

Before addressing the merits of the court's ruling on the dismissal motion, we will consider the Esquivels' fifth issue in which they argue that Judge Aguilar erred by failing to recuse himself prior to the hearing on the motions to dismiss. We emphasize here that the Esquivels did not file a motion to recuse.

On May 10, 2004, counsel for Del Sol, Will Ballew of the Scott Hulse firm, notified counsel for the Esquivels that his firm was representing Judge Aguilar in an unrelated civil suit.[2] Two days later, the Esquivels's attorney wrote a letter to Ballew proposing that the case be transferred to another judge to avoid the appearance of impropriety. No action was taken on this request. Las Palmas filed its motion to dismiss pursuant to Article 4590i, Section 13.01 on May 19, and a hearing was scheduled for June 3. Del Sol filed its motion to dismiss on May 26. The Esquivels did not file a motion to recuse prior to the dismissal hearing and raised their complaint for the first time in an unverified motion for new trial. Now, on appeal, the Esquivels argue that Judge Aguilar had a duty to recuse himself *sua sponte* pursuant to Rule 18(b)(2) of the Texas Rules of Civil Procedure.

Judges may be removed from a particular case either because they are constitutionally disqualified,[3] because they are subject to a statutory strike,[4] or because they are recused under rules promulgated by the Texas Supreme Court.[5] *In re Union Pacific Resources Co.*, 969 S.W.2d 427, 428 (Tex.1998). The grounds and procedures for each type of removal are fundamentally different. *Id.* If a judge is constitutionally disqualified or subject to disqualification under Texas Government Code § 74.053(d), any orders or judgment rendered by him are void. *Id., Pena v. Pena,* 986 S.W.2d 696, 700 (Tex.App.-Corpus Christi 1998), *pet. denied per curiam,* 8 S.W.3d 639 (Tex.1999). Thus, a constitutional disqualification may be raised at any stage of the proceedings and cannot be waived. *Spigener v. Wallis,* 80 S.W.3d

2. According to the Esquivel's motion for new trial, that suit was filed on May 3, 2004.

3. Tex. Const. art. V, § 11.

4. Tex.Gov't Code Ann. § 74.053(d)(Vernon 2005).

5. Tex.R.Civ.P. 18b; Tex.R.App.P. 16.

174, 180 (Tex.App.-Waco 2002, no pet.), *citing Buckholts Independent School District v. Glaser*, 632 S.W.2d 146, 148 (Tex. 1982). In contrast, the existence of grounds for recusal of a judge does not void or nullify subsequent proceedings before that judge and can be waived if not raised by proper motion. *In re Union Pacific Resources*, 969 S.W.2d at 428, *Pena*, 986 S.W.2d at 700.

■ The Esquivels do not contend that Judge Aguilar is disqualified, but instead argue that he should have, on his own motion, recused himself because his impartiality could reasonably be questioned by virtue of his attorney-client relationship with the Scott Hulse firm. *See* Tex. R.Civ.P. 18b(2)(a)(A judge shall recuse himself in any proceeding in which his impartiality might reasonably be questioned).[6] Rule 18a sets forth the procedure for recusal of judges. Tex.R.Civ.P. 18a. A verified motion to recuse must be filed at least ten days before trial or other hearing. Tex.R.Civ.P. 18a(a). A party who fails to file a motion which complies with Rule 18a waives the right to complain of a judge's refusal to self-recuse. *See Union Pac. Resources*, 969 S.W.2d at 428; *Spigener*, 80 S.W.3d at 180; *Pena*, 986 S.W.2d at 700. Because the Esquivels failed to file a motion to recuse, they have waived their complaint. Issue Five is overruled.

## ARTICLE 4590i

■ In Issues One through Four, the Esquivels complain that the trial court erred by dismissing their suit. Both Del Sol and Las Palmas sought dismissal on the grounds that Dr. Castillo is not qualified to render an expert opinion on medical causation and her expert report failed to adequately state the standard of care or how that standard was breached.

■ We review a trial court's order dismissing a claim for failure to comply with Section 13.01(d)'s expert report requirements under an abuse of discretion standard. *Walker v. Gutierrez*, 111 S.W.3d 56, 62 (Tex.2003); *Bowie Memorial Hospital v. Wright*, 79 S.W.3d 48, 52 (Tex. 2002). Under this standard, we determine whether the trial court acted arbitrarily and without reference to any guiding rules or principles when it struck the Esquivels' expert report and dismissed their case with prejudice. *See Walker*, 111 S.W.3d at 62. We may not reverse a trial court's discretionary ruling simply because we might have decided it differently. *Id.*

■ Medical malpractice plaintiffs must, within 180 days of filing their claim, provide each defendant physician and health-care provider an expert report with the expert's *curriculum vitae* or they must voluntarily nonsuit the action. *See* Tex. Rev.Civ.Stat.Ann. art. 4590i, § 13.01(d); *Bowie Memorial Hospital*, 79 S.W.3d at 51. The expert report must provide "a fair summary of the expert's opinions as of the date of the report regarding applicable standards of care, the manner in which the care rendered by the physician or health care provider failed to meet the standards, and the causal relationship between that failure and the injury, harm, or damages

---

**6.** In 2001, the Supreme Court Rules Advisory Committee, of which the author was a member, forwarded to the Texas Supreme Court a proposed amendment to Rule 18b. The proposal provided that a judge is disqualified where a lawyer in the proceeding, or the lawyer's firm, is representing the judge or judge's spouse or minor child in an ongoing legal proceeding other than a class action. Richard R. Orsinger, *What Representing the Judge or Contributing to Her Campaign Can Mean to Your Clients: Proposed New Disqualification and Recusal Rules*, in Vol. 1 State Bar of Tex., Advanced Family Law Course (2001), Tab 8. The proposed amendment has not been adopted.

claimed." Tex.Rev.Civ.Stat. Ann. art. 4590i, § 13.01(r)(6); *Bowie Memorial Hospital,* 79 S.W.3d at 51. If a plaintiff timely files an expert report and the defendant moves to dismiss because of the report's inadequacy, the trial court must grant the motion only if it appears to the court, after hearing, that the report does not represent a good faith effort to comply with the definition of an expert report in Subsection (r)(6) of this section. *Bowie Memorial Hospital,* 79 S.W.3d at 51–52, *quoting* Tex. Rev.Civ.Stat.Ann. art. 4590i, § 13.01(*l*).

▪▪▪ When considering a motion to dismiss under Section 13.01(*l*), the issue for the trial court is whether the report represents a "good-faith effort" to comply with the statutory definition of an expert report. *Bowie Memorial Hospital,* 79 S.W.3d at 52; *American Transitional Care Centers of Texas, Inc. v. Palacios,* 46 S.W.3d 873, 878 (Tex.2001). To constitute a "good-faith effort," the report must: (1) inform the defendant of the specific conduct the plaintiff has called into question, and (2) it must provide a basis for the trial court to conclude that the claims have merit. *Bowie Memorial Hospital,* 79 S.W.3d at 52; *Palacios,* 46 S.W.3d at 879.

▪▪▪ The trial court should look no further than the report itself, because all the information relevant to the inquiry is contained within the four corners of the document. *Bowie Memorial Hospital,* 79 S.W.3d at 52. The report need not marshal all of the plaintiff's proof, but it must include the expert's opinion on each of the three elements identified by the Act: standard of care, breach, and causal relationship. *Bowie Memorial Hospital,* 79 S.W.3d at 52. A report cannot merely state the expert's conclusions about these elements. *Id.* Rather, the expert must explain the basis of her statements to link

her conclusions to the facts. *Id.* Likewise, a report that omits any of the statutory requirements does not constitute a good-faith effort. *Palacios,* 46 S.W.3d at 879.

Several courts of appeals have recognized that to comply with Section 13.01(d) and (r)(6), the expert report must establish, on its face, that the purported expert is qualified. *See Estate of Allen v. Polly Ryon Hospital Authority,* No. 01–04–00151–CV, 2005 WL 497291 at *3 (Tex. App.-Houston [1st Dist.] March 3, 2005, no pet. h.)(not reported); *Hansen v. Starr,* 123 S.W.3d 13, 20 (Tex.App.-Dallas 2003, pet. denied); *Chisholm v. Maron,* 63 S.W.3d 903, 907 (Tex.App.-Amarillo 2001, no pet.); *Schorp v. Baptist Memorial Health System,* 5 S.W.3d 727, 732 (Tex. App.-San Antonio 1999, no pet.). In this appeal, the relevant inquiry is whether the expert report showed Dr. Castillo was qualified to express an expert opinion with respect to proximate cause of the injuries alleged, namely, the decubitus ulcers, surgery, and complete loss of mobility. Regarding her qualifications, Dr. Castillo's report contains the following:

> My name is Mary Helen M. Castillo, PhD, RN, FAAN. I hold a doctorate (PhD) degree from New Mexico State University[7] and have taught undergraduate and graduate level nursing courses. I am a professor and the former chair of the Nursing Department at the University of Texas at El Paso, and the former Dean, College of Health Sciences and Human Services at the University of Texas–Pan American in Edinburg, Texas. Currently, I am employed as Dean, College of Health and Human Development at California State University, Northridge.

The CV reflects that Dr. Castillo has served in various capacities at a 450–bed

---

7. The CV reflects that Dr. Castillo's doctorate    is in education.

hospital, including assistant administrator for nursing services, acting director, director of nursing services, director of staff education, and nursing supervisor.

Dr. Castillo evaluated the medical records from Mrs. Esquivel's hospitalizations at Las Palmas and Del Sol. Her stated purpose in making the expert report was to evaluate the nursing care provided to Mrs. Esquivel as it related to the development of multiple decubitus ulcers on her sacrum and buttocks. She was familiar with the standard of care for skin care and prevention of decubitus ulcers as well as documentation, observation, assessment, and intervention required to meet the standard of care. Based on her review of the records, the nursing staffs at both Del Sol and Las Palmas failed to observe and document skin integrity and breakdown of tissue and these omissions of the standard of care resulted in multiple decubitus ulcers and further hospitalization, surgery, and rehabilitation. Dr. Castillo also generally stated that the nursing staffs at both facilities failed to use proper care to assure that Mrs. Esquivel received the basic nursing care she needed.

■■■ Non-physicians may qualify as medical experts by virtue of special experience. *Johnson v. Hermann Hospital,* 659 S.W.2d 124, 126 (Tex.App.-Houston [14th Dist.] 1983, writ ref'd n.r.e.). As a nursing expert, Dr. Castillo could provide an expert opinion on those matters within her experience and training. Thus, she could testify regarding the nursing standard of care and how that standard was breached. However, a nurse is prohibited from making a medical diagnosis or prescribing corrective or therapeutic treatment. Tex. Occ.Code Ann. § 301.002(2)(Vernon 2004) (defining "professional nursing" to include the observation, assessment, intervention, evaluation, rehabilitation, care and counsel, or health teachings of a person who is ill, injured, infirm, or experiencing a change in normal health processes, but expressly providing that the term does not include acts of medical diagnosis or prescribing therapeutic or corrective measures); *see Costello v. Christus Santa Rosa Health Care Corporation,* 141 S.W.3d 245, 248 (Tex.App.-San Antonio 2004, no pet.). Therefore, Dr. Castillo is not qualified to express an expert opinion on subjects that require making a medical diagnosis. *See Costello,* 141 S.W.3d at 248 (holding that registered nurse not qualified to express expert opinion as to cause of patient's death); *see also Arlington Memorial Hospital Foundation, Inc. v. Baird,* 991 S.W.2d 918, 921 (Tex.App.-Fort Worth 1999, pet. denied)(nurse was not qualified to medically diagnose thermal burns, and therefore, could not testify regarding causation); *Pace v. Sadler,* 966 S.W.2d 685, 690 (Tex.App.-San Antonio 1998, no pet.)(although qualified to render expert opinion on nursing standard of care, nurse was not qualified to medically diagnose heart condition).[8]

8. Our opinion should not be read as holding that Dr. Castillo cannot qualify as a medical expert or as establishing a "bright line" rule that only medical doctors are competent to provide expert testimony on medical causation. We are aware that some courts have declined to adopt a such a "bright line" rule. *See e.g., Crocker v. Paulyne's Nursing Home, Inc.,* 95 S.W.3d 416, 422 (Tex.App.-Dallas 2002, no pet.)(holding that nurses are not perse barred from providing expert opinion as to proximate cause, but in this case, nurses were not shown to be qualified to render expert opinion on proximate causation with respect to the patient's respiratory distress and hyperglycemia resulting in death); *Lesser v. St. Elizabeth Hospital,* 807 S.W.2d 657, 659 (Tex.App.-Beaumont 1991, writ denied)(refusing to adopt "bright line" rule, but holding that nurse was not qualified to express opinion on medical causation). However, a nurse's ability to provide an expert opinion as

The Tyler Court of Appeals has held in *In re Highland Pines Nursing Home, Ltd.*, No. 12–03–00221–CV, 2004 WL 100403 at *3 (Tex.App.-Tyler January 21, 2004, orig. proceeding)(not reported) that a nurse was qualified to express an expert opinion regarding the causal link between the breach of the standard of care by the staff at a nursing home and the development of the patient's decubitus ulcers. But the court went on to hold that the nurse was *not* qualified to express an opinion concerning the causal link between the negligence and the cause of death. *In re Highland Pines*, 2004 WL 100403 at *3. Dr. Castillo's report and CV do not establish that she has any training, education, skill or clinical nursing experience relevant to diagnosing the causes of decubitus ulcers or any injuries resulting from decubitus ulcers and their treatment. The Esquivels failed to show that Dr. Castillo possesses the expertise which would qualify her to express an opinion as to the causal link between the nurses' alleged failure to observe and document skin integrity and breakdown of tissue and the development of the decubitus ulcers or any other resulting injuries. *See Costello*, 141 S.W.3d at 248; *Arlington Memorial Hospital*, 991 S.W.2d at 921; *Pace*, 966 S.W.2d at 690. Similarly, the expert report does not establish that Dr. Castillo was qualified to render an opinion that the nursing staffs' alleged breach of the standard of care proximately caused Mrs. Esquivel's inability to walk.

We must ultimately conclude that Judge Aguilar did not abuse his discretion in determining that Dr. Castillo was not qualified to render an opinion on medical causation. Issues One through Four are overruled. Having overruled all issues to medical causation is necessarily limited by the prohibition against making a medical di- agnosis.

presented on appeal, we affirm the dismissal with prejudice.

BARAJAS, C.J., not participating.