In the Matter of the MARRIAGE OF Donald William JORDAN and Marguerite Ann Jordan.

No. 10–07–00210–CV.

Court of Appeals of Texas, Waco.

July 16, 2008.

Marguerite Ann Jordan, pro se.

George M. Robinson, Fairfield, for Appellee/Respondent.

Before Chief Justice GRAY, Justice VANCE, and Justice REYNA.

## OPINION

FELIPE REYNA, Justice.

Marguerite Ann Jordan brings this appeal from the divorce decree dissolving her marriage to Donald William Jordan. Representing herself, Marguerite presents what we shall characterize as five issues [1] in which she contends: (1) the trial judge was "extremely prejudiced" against her; (2) she was forced under "extreme duress" to permit her trial attorney to sign the decree, indicating that the decree was "approved as to form only"; (3) there is no evidence to support the court's characterization of some of the Jordans' marital property; (4) the court abused its discretion by the manner in which it divided the Jordans' marital property; and (5) she "was not notified of the divorce hearings." We will reverse and remand.

### Background

Donald filed his original petition for divorce in October 2005. Marguerite responded with a counterpetition a few weeks later. Marguerite's first attorney filed a motion to withdraw in March 2006, which the court granted one month later after a hearing for which Marguerite did not appear.

The court rendered a post-answer default judgment in Donald's favor in August 2006. Marguerite timely filed a *pro se* motion for new trial, which the court granted. With new counsel representing Marguerite, the trial court conducted a "second trial" in April 2007 and announced its decision at the conclusion of the hearing.

Apparently because Marguerite disagreed with the wording of the proposed decree, a subsequent hearing was conducted on Donald's motion to sign the decree. At this hearing, the court explained to Marguerite the difference between approving a judgment or decree "as to form" and approving it "as to substance." Subject to one provision which the parties struck by agreement, she agreed that the proposed decree conformed with the court's oral pronouncement and consented to her attorney signing the decree, indicating counsel's approval "as to form only." Marguerite's attorney withdrew from the representation at the conclusion of this hearing, and she has represented herself ever since.

### Extreme Prejudice

Marguerite contends in her first issue that the trial judge was "extremely prejudiced" against her.

After the court signed the decree and after her attorney's withdrawal, Marguerite filed a *pro se* motion for change of venue alleging that "there exists in the 87th District Court so great a prejudice against me that I cannot obtain a fair and impartial hearing." *See* TEX.R. CIV. P. 257(a).

A claim that a trial judge is biased or prejudiced against a party is a ground for recusal. *Id.* 18b(2)(b). Recusal of a trial judge is obtained by the filing of a verified motion stating "with particularity the grounds why the judge before whom the

---

1. Because Marguerite is representing herself, we have strived to construe her appellate pleadings with patience and liberality. *See* TEX.R.APP. P. 38.9 (briefing rules should be construed liberally); *Corona v. Pilgrim's Pride Corp.*, 245 S.W.3d 75, 78 n.3 (Tex.App.–Texarkana 2008, pet. denied) ("We review and evaluate pro se pleadings with liberality and patience"); *In re Taylor*, 28 S.W.3d 240, 246 (Tex.App.–Waco 2000, orig. proceeding) ("we review such pleadings 'with patience and liberality' ").

case is pending should not sit." *Id.* 18a(a). "A party who fails to file a motion which complies with Rule 18a waives the right to complain of a judge's refusal to recuse himself." *Spigener v. Wallis,* 80 S.W.3d 174, 180 (Tex.App.–Waco 2002, no pet.) (citing *In re Union Pac. Res. Co.,* 969 S.W.2d 427, 428 (Tex.1998) (orig. proceeding)); *accord Esquivel v. El Paso Healthcare Sys., Ltd.,* 225 S.W.3d 83, 88 (Tex. App.–El Paso 2005, no pet.). Here, Marguerite did not file a recusal motion. Therefore, she has waived the right to complain that Judge Black failed to recuse himself. *Id.*

Marguerite did raise this complaint in her motion for change of venue. However, Rule 257 requires that such a motion be supported by the affidavits "of at least three credible persons." TEX.R. CIV. P. 257. Because Marguerite's motion for change of venue was not supported by the required affidavits, the court did not err by refusing to rule on the motion. *See Acker v. Denton Publ'g Co.,* 937 S.W.2d 111, 118 (Tex.App.–Fort Worth 1996, no writ).

Therefore, because Marguerite did not properly challenge the trial judge's alleged "extreme prejudice" by verified recusal motion or by a motion to change venue supported by three affidavits, she has waived the right to complain on appeal of his alleged prejudice. *See Union Pac. Res. Co.,* 969 S.W.2d at 428; *Esquivel,* 225 S.W.3d at 88; *Spigener,* 80 S.W.3d at 180; *Acker,* 937 S.W.2d at 118. Accordingly, we overrule Marguerite's first issue.

### Extreme Duress

■ Marguerite contends in her second issue that she was forced under "extreme duress" to permit her trial attorney to sign the decree,[2] indicating that the decree was "approved as to form only."

Specifically, Marguerite states in her brief:

[My trial attorney] told me during the hearing that Judge Black was extremely prejudiced against me and that he told me I had to sign the court documents in order to obtain an appeal and Judge Black had told me if I appeal he would put me in jail for contempt and for filing a frivolus [sic] appeal. I signed under extreme duress.

The trial court correctly explained to Marguerite that "approved as to form only" signifies only that the written judgment comports with the court's oral pronouncement and does not affect a party's right to seek a new trial. *See Beal Bank, SSB v. Biggers,* 227 S.W.3d 187, 190–91 (Tex.App.–Houston [1st Dist.] 2007, no pet.); *Oryx Energy Co. v. Union Nat'l Bank of Tex.,* 895 S.W.2d 409, 416–17 (Tex. App.–San Antonio 1995, writ denied). This notation "does not indicate a consent judgment [or] a voluntary relinquishment of the right to appeal." *Oryx Energy,* 895 S.W.2d at 416; *accord Beal Bank,* 227 S.W.3d at 191.

From the record, Marguerite plainly did not want her attorney to sign the decree even to indicate that he approved it "as to form only." Nonetheless, she relented after the court explained what this designation means and after the parties agreed to strike a certain provision in the proposed decree. Therefore, because Marguerite's right of appeal has not been adversely affected in any tangible way by her attorney's "approval" of the form of the decree,

**2.** Marguerite seems to complain that she herself was forced to sign the decree against her wishes. However, it appears that only her attorney signed the decree, indicating counsel's approval "as to form only," while Marguerite and Donald were both required to initial the provision that was struck by agreement.

she cannot show that she was harmed thereby, and we overrule her second issue. Cf. TEX.R.APP. P. 44.1(a)(2) (an appellant may obtain reversal on appeal if he or she shows that some error "probably prevented the appellant from properly presenting the case to the court of appeals").

## Characterization of Marital Property

Marguerite contends in her third issue that there is no evidence to support the court's characterization of some of the Jordans' marital property. In particular, she argues that: (1) Donald's retirement fund became community property because he took a lump sum distribution; (2) a 5-acre tract of land referred to as the "farm" is her separate property; (3) three trailers are community property because they were purchased during the parties' marriage; and (4) the home awarded to Donald became community property because it was refinanced during the marriage.

■■■ All property on hand at the time of divorce is presumed to be community property. TEX. FAM.CODE ANN. § 3.003(a) (Vernon 2006); Granger v. Granger, 236 S.W.3d 852, 856 (Tex.App.–Tyler 2007, pet. denied); Long v. Long, 234 S.W.3d 34, 37 (Tex.App.–El Paso 2007, no pet.). This is a rebuttable presumption, and a spouse who claims any asset as separate property must rebut this presumption by clear and convincing evidence. TEX. FAM.CODE ANN. § 3.003(b) (Vernon 2006); Granger, 236 S.W.3d at 856; Long, 234 S.W.3d at 37. Separate property consists primarily of property owned before the marriage or acquired during the marriage by gift, devise or descent. TEX. FAM.CODE ANN. § 3.001(1), (2) (Vernon 2006); Granger,

236 S.W.3d at 856; Long, 234 S.W.3d at 37.

We review the court's characterization of the marital property under traditional legal and factual insufficiency standards. Dutton v. Dutton, 18 S.W.3d 849, 852 (Tex. App.–Eastland 2000, pet. denied); see also Beard v. Beard, 49 S.W.3d 40, 53–65 (Tex. App.–Waco 2001, pet. denied). Because Marguerite does not specify which type of challenge she is making, we shall construe her complaint as a legal insufficiency challenge.

When we conduct a legal insufficiency review, we must determine "whether the evidence at trial would enable reasonable and fair-minded people to reach the verdict under review." City of Keller v. Wilson, 168 S.W.3d 802, 827 (Tex.2005). We "must credit favorable evidence if reasonable jurors could, and disregard contrary evidence unless reasonable jurors could not." Id.

With regard to Donald's retirement, the record reflects that Donald maintained employment with TXU for twenty-one or twenty-two years and that his last four or five years of employment with TXU were during his marriage to Marguerite.[3] Donald received a lump sum payment of $138,750 for his retirement.

■■ When the retirement is fully matured at the time of divorce, Texas courts apply the Taggart formula to determine the extent of the community estate's interest. Limbaugh v. Limbaugh, 71 S.W.3d 1, 16 (Tex.App.–Waco 2002, no pet.) (citing Taggart v. Taggart, 552 S.W.2d 422, 424 (Tex.1977)); Burchfield v. Finch, 968 S.W.2d 422, 424–25 (Tex.App.–Texarkana 1998, pet. denied). Under Taggart, the

---

**3.** The attorneys stipulated at the beginning of trial that Donald had "20 years—22 years of service." Marguerite later testified that he was employed with TXU for 21 years. The attorneys likewise stipulated that 5 of those years were during the parties' marriage, while Marguerite testified it was only 4 years.

community interest in a fully matured retirement plan is calculated by dividing the number of months the parties were married during the employee spouse's employment by the total number of months of service of the employee spouse. *See Taggart*, 552 S.W.2d at 424; *Limbaugh*, 71 S.W.3d at 16 n. 12; *Burchfield*, 968 S.W.2d at 424–25. The resulting percentage represents the community estate's interest in the retirement benefits. *Limbaugh*, 71 S.W.3d at 16 n. 12.

Applying *Taggart*, the community estate's interest in Donald's retirement benefits is approximately twenty-five percent or $34,688. This is the position Donald took at trial; Marguerite's trial counsel stated on the record that he agreed with this percentage calculation; and there is nothing in the record to indicate that the trial court calculated the community interest in Donald's retirement differently. To the extent, Marguerite challenges the manner in which the trial court divided the community interest in Donald's retirement, we will address that issue in our discussion of Marguerite's fourth issue.

■ Marguerite also contends that a 5–acre tract of land which the parties refer to as the "farm" is her separate property. The parties disputed whether the farm was Marguerite's separate property. She signed a contract for deed to purchase the farm about one year before Donald and she married. The contract required monthly payments of $114.01 for 120 months, ending in October 2008. Although Donald disputed it, Marguerite testified that she made these monthly payments from her own income until July 2004, when

they paid the debt in full with a lump sum payment of $4,860 from Donald's retirement. Donald observed that title to the farm was formally conveyed during their marriage, and he asked the court to award the farm to him as part of the community estate.[4]

At the end of trial, the court pronounced that the farm was "confirmed to be Marguerite Jordan's separate property." However, the written decree, although it awards the farm to Marguerite, treats the farm as a part of the community estate which was divided between the parties.[5] *See Thomas v. Martinez*, 217 S.W.3d 680, 684 (Tex.App.–Dallas 2007, no pet.) (written judgment controls over oral pronouncement); *In re K.M.B.*, 148 S.W.3d 618, 622 (Tex.App.–Houston [14th Dist.] 2004, no pet.) (same).

■ The character of property owned by the parties to a divorce is determined by its character when either or both spouse(s) took title to that property under the inception-of-title rule. *See Barnett v. Barnett*, 67 S.W.3d 107, 111 (Tex.2001); *In re Marriage of Morris*, 123 S.W.3d 864, 871 (Tex.App.–Texarkana 2003, no pet.); *see also Limbaugh*, 71 S.W.3d at 15. " 'When real property is acquired under a contract for deed or installment contract,' as in the present case, 'the inception of title relates back to the time the contract was executed, not the time when legal title is conveyed.' " *Morris*, 123 S.W.3d at 871 (quoting *Wilkerson v. Wilkerson*, 992 S.W.2d 719, 722 (Tex.App.–Austin 1999, no pet.)).

---

4. Although Donald does not dispute Marguerite' contention on appeal that the farm is her separate property, he took a different position in the trial court both in his testimony and in the proposed divorce decree which he offered in evidence.

5. The decree treats the residence awarded to Marguerite in the same fashion. By contrast, a subsequent section of the decree entitled *"Confirmation of Separate Property"* identifies only Donald's residence as "separate property."

Here, because Marguerite executed the contract for deed before marriage, the farm was her separate property. Thus, the evidence is not such as "would enable reasonable and fair-minded people" to determine that the farm was community property. *See Morris,* 123 S.W.3d at 871; *Wilkerson,* 992 S.W.2d at 722; *see also City of Keller,* 168 S.W.3d at 827.

Marguerite next contends that three trailers [6] awarded to Donald are community property. Donald testified that he purchased one of them before marriage and the other two during the marriage. Marguerite testified that all three were purchased during the marriage. The written decree appears to treat the trailers as community property because they are awarded to Donald as part of "the parties' marital estate" and they are not included under the section confirming the parties' separate property. Thus, the court appears to have characterized the trailers in accordance with Marguerite's testimony.

Finally, Marguerite complains that the home awarded to Donald and confirmed to be his separate property was community property because it was refinanced during the marriage.

■ Donald testified that he bought this home in 1986, before the marriage. The home was refinanced during the marriage. However, under the inception-of-title rule, the home is Donald's separate property because he purchased it before the marriage. *See Barnett,* 67 S.W.3d at 111; *Morris,* 123 S.W.3d at 871; *see also* Tex. Fam.Code Ann. § 3.001(1). The fact that the home was refinanced during the marriage does not change its character as separate property although the refinancing may give rise to a claim for economic

contribution or reimbursement of any community funds paid toward the refinanced debt. *See Garcia v. Garcia,* 170 S.W.3d 644, 649–52 (Tex.App.–El Paso 2005, no pet.); *see also* Tex. Fam.Code Ann. § 3.403 (Vernon 2006), § 3.408 (Vernon Supp. 2007).

Accordingly, we sustain Marguerite's third issue in part and overrule it in part.

## Division of Community Property

Marguerite contends in her fourth issue that the court abused its discretion by the manner in which it divided the parties' community property. In particular, she argues that she did not receive "a fair and proper portion of equipment, tools, monies from stocks and retirement funds" because; (1) the court failed to account for Donald's alleged misconduct in "breaking into" the farm, "illegally removing" equipment, "jacking up" the fences, and vandalizing the premises; (2) the court failed to take into account her medical condition (*i.e.,* "lung damage"); (3) the court failed to consider that her own retirement fund was depleted at the time of the divorce because of her disability; (4) Donald allegedly misapplied $11,000 of the funds obtained when his home was refinanced by failing to apply these funds for repairs and using them instead to build a workshop which enhanced the value of his separate property; (5) the court abused its discretion by imposing an owelty lien on the farm; (6) Donald allegedly withdrew $10,000 of his retirement funds without her knowledge; and (7) Donald allegedly had "two improper relationships" during their marriage.

---

**6.** Although the parties testified about three trailers, only one trailer is specifically listed in the decree, namely, a "10' trailer." Nevertheless, this section of the decree awards Donald "[a]ll tools and misc. items including but not limited to" this particular trailer and other listed items.

## Standard of Review

■ A divorce court must divide the parties' community property[7] "in a manner that the court deems just and right, having due regard for the rights of each party." Tex. Fam.Code Ann. § 7.001 (Vernon 2006); *see Wilkerson,* 992 S.W.2d at 722. Some of the factors the court can consider include the spouses' capacities and abilities, benefits which the party not at fault would have derived from continuation of the marriage, business opportunities, education, relative physical conditions, relative financial condition and obligations, size of the separate estates, and the nature of the property. *Schaban–Maurer v. Maurer–Schaban,* 238 S.W.3d 815, 820 (Tex.App.–Fort Worth 2007, no pet.); *Beard,* 49 S.W.3d at 66; *see also Schlueter v. Schlueter,* 975 S.W.2d 584, 589 (Tex. 1998). The court may also consider whether one of the parties to the marriage has wasted community assets. *Schlueter,* 975 S.W.2d at 589; *Schaban–Maurer,* 238 S.W.3d at 820–21; *Beard,* 49 S.W.3d at 66.

We review this determination under an abuse-of-discretion standard. *Schaban–Maurer,* 238 S.W.3d at 820; *Granger,* 236 S.W.3d at 856; *Moroch v. Collins,* 174 S.W.3d 849, 857 (Tex.App.–Dallas 2005, pet. denied). Thus, we do not conduct an independent review of findings of fact in a child support case under traditional legal and factual sufficiency standards. *Granger,* 236 S.W.3d at 856; *see also In re Keller,* 233 S.W.3d 454, 459 (Tex.App.–Waco 2007, pet. denied) (guardianship proceeding). Rather, legal and factual sufficiency are factors which can be considered in determining whether an abuse of discretion has occurred. *Id.*

We view the evidence in the light most favorable to the trial court's decision. *Keller,* 233 S.W.3d at 459; *Paradigm Oil, Inc.*

v. Retamco Operating, Inc., 161 S.W.3d 531, 536 (Tex.App.–San Antonio 2004, pet. denied). An abuse of discretion does not occur when the trial court's decision is based on conflicting evidence. *Davis v. Huey,* 571 S.W.2d 859, 862 (Tex.1978); *Keller,* 233 S.W.3d at 459.

## Alleged Misconduct

Looking first to allegations of misconduct on Donald's part, Marguerite contends that the court failed to take into account: (1) Donald's alleged misconduct in "breaking into" the farm, "illegally removing" equipment, "jacking up" the fences, and vandalizing the premises; (2) his alleged misapplication of $11,000 of the funds obtained when his home was refinanced by failing to apply those funds for repairs and using them instead to build a workshop which enhanced the value of his separate property; (3) his alleged withdrawal of $10,000 of his retirement funds without her knowledge; and (4) his alleged "improper relationships."

Donald conceded that he entered the farm after Marguerite locked him out and retrieved a tractor and other unspecified equipment, but he denied vandalizing the property in any manner. Other than accusing Donald of vandalizing the farm, Marguerite offered no evidence to substantiate this claim.

The evidence reflects that the Jordans refinanced the debt on Donald's home and executed a new note in the amount of $23,000. Marguerite alleges that Donald misapplied $11,000 of these funds because he used them to build a workshop on the property (his separate property) rather than for repairs to her home so it could be rented. Donald testified that he spent approximately $3,000 to build the work-

---

7. Settled law prohibits a court from divesting a spouse of his or her separate property.

*Shanks v. Treadway,* 110 S.W.3d 444, 448 (Tex.2003).

shop. Donald also testified that they borrowed an additional $9,000[8] secured by Marguerite's house for payment of taxes and other improvements. Donald expressly denied using any of this $9,000 for the workshop.

Marguerite encourages this Court to review the documentary evidence because it will purportedly demonstrate that Donald spent "amounts of monies" that she "was not aware of." "For example, $10,000.00 was taken out of [Donald's] retirement funds without [Marguerite's] knowledge." However, she does not identify where in the record there is testimony or documentary evidence to support this claim. And our review of the record does not disclose any evidence which would support the claim.

Marguerite also states that she "found out about two improper relationships that [Donald] had during the marriage." However, she does not identify where in the record there is evidence to support this claim, and our own review of the record does not disclose any evidence which would support the claim.

### Medical Condition

Marguerite contends that the court failed to take into account her medical condition in dividing the community estate. This is a factor which the court could consider. *See Schaban–Maurer,* 238 S.W.3d at 820; *Beard,* 49 S.W.3d at 66. Marguerite testified that she was previously employed as a welfare caseworker for the State of Texas before she had to leave state employment in 2001 due to a disability. She received disability payments from

November 2001 through February 2004. She took a new position in the prison system in early 2005. She explained that her disability was due to unspecified "lung damage" which she still has but is "controlling." She testified that she was earning gross monthly income of about $1,800 and was expecting a substantial pay raise because of a shortage of prison workers. She did not testify that her lung condition impacted her present earning ability in any manner, and she did not ask the court to award her a disproportionately greater share of the community estate because of her medical condition.

### Marguerite's Retirement

Marguerite contends that she should been awarded a larger share of the community interest in Donald's retirement because her own retirement fund was depleted during the years she collected disability. However, she presented no evidence regarding the value of her retirement, and she did not ask the court to award her a disproportionately greater share of the community interest in Donald's retirement because of any alleged depletion of her own retirement.

### The Owelty Lien

■ Marguerite finally contends that the court abused its discretion by imposing a $15,900 owelty lien in Donald's favor on the farm because Donald received virtually all the "equipment, tools, and trailers" bought during the marriage and because the basis for this lien is "not clear."

From the argument of counsel at trial,[9] it appears that the court imposed the lien

8. Perhaps this is the debt Marguerite is referring to because her attorney characterized it as amounting to "approximately around $11,000, or that $9,000." The documentary evidence reflects that it was in the amount of $9,000.

9. In closing argument, Donald's counsel referred to this as an "economic contribution claim" and argued that "the statute" requires that the court apply the "fair market value" in determining the amount of the claim. *See*

in this case to satisfy Donald's claim for economic contribution under section 3.403 of the Family Code.[10] *See* TEX. FAM.CODE ANN. § 3.403 (Vernon 2006). Section 3.406(a) requires a divorce court to "impose an equitable lien" on the benefited property in favor of the contributing spouse when the court awards a claim for economic contribution. *Id.* § 3.406(a) (Vernon 2006).

Section 3.402 defines an "economic contribution" to include "the dollar amount of the reduction of the principal amount of a debt secured by a lien on property owned before marriage, to the extent the debt existed at the time of marriage." *Id.* § 3.402(a)(1) (Vernon 2006). "Economic contribution" does not include "expenditures for ordinary maintenance and repair or for taxes, interest, or insurance." *Id.* § 3.402(b)(1) (Vernon 2006).

A marital estate that makes an economic contribution to another marital estate has a claim for that contribution under a formula established by section 3.403. *Id.* § 3.403.

(b) The amount of the claim under this section is equal to the product of:

(1) the equity in the benefited property on the date of dissolution of the marriage, the death of a spouse, or disposition of the property; multiplied by

(2) a fraction of which:

(A) the numerator is the economic contribution to the property owned by the benefited marital estate by the contributing marital estate; and

(B) THE DENOMINATOR IS AN AMOUNT EQUAL TO THE SUM OF:

(i) the economic contribution to the property owned by the benefited marital estate by the contributing marital estate; and

(ii) the contribution by the benefited estate to the equity in the property owned by the benefited estate.

(b–1) The amount of the contribution by the benefited marital estate under Subsection (b)(2)(B)(ii) is measured by determining:

(1) if the benefited estate is the community property estate:

(A) the net equity of the community property estate in the property owned by the community property estate as of the date of the first economic contribution to that property by the contributing separate property estate; and

(B) any additional economic contribution to the equity in the property owned by the community property estate made by the benefited community property estate after the date described by Subdivision (A); or

(2) if the benefited estate is the separate property estate of a spouse:

(A) the net equity of the separate property estate in the property owned by the separate property estate as of the date of the first economic contribution to that property by the contributing community

TEX. FAM.CODE ANN. §§ 3.401(3), 3.403 (Vernon 2006).

**10.** Generally, a claim for economic contribution must be raised in a party's pleadings, and the judgment must conform to the pleadings. *See Raymond v. Raymond,* 190 S.W.3d 77, 83 (Tex.App.–Houston [1st Dist.] 2005, no pet.). Here, Donald did not include a claim for economic contribution in his divorce petition. Nevertheless, Rule of Civil Procedure 67 permits the trial of unpleaded issues "by express or implied consent," and it appears that the issue was tried by consent in this case, though Marguerite disputes the amount of the claim. *See* TEX.R. CIV. P. 67.

property estate or the separate property estate of the other spouse; and

(B) any additional contribution to the equity in the property owned by the separate property estate made by the benefited separate property estate after the date described by Subdivision (A).

*Id.* § 3.403(b), (b–1).

■ A spouse seeking economic contribution bears the burden of proving that claim. *See Hailey v. Hailey,* 176 S.W.3d 374, 388 (Tex.App.–Houston [1st Dist.] 2004, no pet.); *Boyd v. Boyd,* 131 S.W.3d 605, 613 (Tex.App.–Fort Worth 2004, no pet.).

Here, Donald offered evidence that he spent $4,860 from his retirement funds to pay off the debt on the farm. Marguerite testified that she paid about $2,200 of her own money toward the farm debt.[11] Donald estimated in closing argument that the community estate paid $2,400 toward the farm debt. He offered evidence that the farm was then appraised at $20,040. Thus, he argued that Marguerite held a thirteen percent separate property interest (worth $2,605), the community estate held a fifteen percent interest (worth $3,005), and he owned a seventy-two percent separate property interest (worth $14,430), based on the percentages each estate paid toward the principal amount of the debt. Applying these calculations, Donald argued that, if the court chose to award the farm to Marguerite, it should impose a $15,930 lien on the farm representing his community and separate property interests therein.[12] However, Donald's calculations are not supported by the limited evidence offered on this issue.

We have already determined that the farm was Marguerite's separate property. We have likewise determined that the community estate's interest in Donald's retirement benefits was approximately twenty-five percent or $34,688. Donald commingled the community portion of his retirement with his separate property interest in the retirement by depositing his entire retirement distribution in a checking account, along with his last paycheck, which was also community property.

Because the community and separate funds were commingled and because there is no testimony to the contrary, we apply the community-out-first presumption to these funds. *See Mock v. Mock,* 216 S.W.3d 370, 373 (Tex.App.–Eastland 2006, no pet.); *Zagorski v. Zagorski,* 116 S.W.3d 309, 319–20 (Tex.App.–Houston [14th Dist.] 2003, pet. denied). Because the account had a negative balance of ($126) when Donald made the first deposit of retirement funds,[13] it is fairly straightforward to determine when the community portion of those funds was spent. The checking account had a balance at the end of that same month of $98,631. Donald did not make the $4,860 payment to satisfy the remaining debt owed on the farm until

11. This sum was derived from the fact that Marguerite made a down payment of $950 and twelve monthly payments of $114.01 (totaling $1368) before the parties married.

12. We have rounded the numbers somewhat, but in essence Donald claimed an interest worth $14,430 plus an additional $1,500 (representing half of the purported community interest in the farm).

13. The first deposit, in the amount of $101,421 was made on June 3, 2004. A handwritten notation beside this deposit entry on the bank statement refers to these funds as the "Retire Funds ck." The second, in the amount of $37,334, was made on June 8. A handwritten notation beside this deposit entry refers to these funds as "Thrift ck." Donald's last paycheck, in the amount of $438, was deposited on June 10.

July 7. Therefore, applying the community-out-first presumption, Donald paid off this debt with separate property funds.

To calculate a claim of economic contribution to separate property, there must be evidence of: (1) the net equity of the separate property as of the date of the first economic contribution to that property by the community property estate or by the separate property estate of the other spouse; (2) the amount(s) of the economic contributions (if any) by (a) the other spouse's separate property estate, (b) the community property estate, and (c) the separate property estate of the spouse who owns the benefited separate property; and (3) the net equity of the separate property as of the date of divorce. *See* TEX. FAM. CODE ANN. § 3.403(b), (b–1)(2).

First, we will try to determine the applicable numbers. Marguerite executed the contract for deed about one year before she married Donald. The contract required a down payment of $950 and included provisions for financing a principal balance of $9,000 for ten years at the rate of 9.00 percent per annum. Marguerite made the down payment of $950 and twelve monthly payments of $114.01 (totaling $1368) before they married. These payments are not included in the calculation. *Id.* §§ 3.403(b–1)(2)(B) (contribution of beneficiary spouse's separate property is calculated to include only those contributions made after the date of the first contribution by the community estate or by the separate property estate of the other spouse); *see also Nelson v. Nelson,* 193 S.W.3d 624, 632 (Tex.App.–Eastland 2006, no pet.) (unlike economic contribution claim under section 3.403, court in determining equitable reimbursement claim may take into account "prenuptial expenditures").

Donald offered no evidence of the net equity of the farm at the time they married. *See* TEX. FAM.CODE ANN. § 3.403(b–1)(2)(A). However, he did offer the contract for deed in evidence, which reflects that Marguerite agreed to purchase the farm for $9,950. Arguably then, when the parties married one year later, the farm had a fair market value of at least $10,000. The net equity is calculated by subtracting "the amount of a lawful lien" on the property from the fair market value of the property. *Id.* § 3.401(3). Applying a standard amortization schedule, the principal balance due on the $9,000 debt after one year would be $8,418. Thus, the farm had an approximate net equity of $1,582 when the parties married.

Donald offered no direct evidence of the economic contributions made during the marriage. He testified that the monthly payments were made from his paycheck. Marguerite disputed this and testified that the monthly payments were made from her paycheck and/or disability. Either way, these were community funds. We will assume that they made the required monthly payments through June 2004, the month before Donald paid off the debt. As previously stated, the economic contribution at issue is the amount by which the principal was reduced. By subtracting the principal balance paid by Donald ($4,860) from the principal balance owed on the date the parties married ($8,418), it appears that the community estate's economic contribution would have been $3,558. *See* TEX. FAM.CODE ANN. § 3.402(a)(1), (b)(1) (the term "economic contribution" includes "the dollar amount of the reduction of the principal amount of [the] debt" but does not include interest payments).

Finally, Donald offered evidence that the farm was valued at $20,040 at the time of divorce. Marguerite disputed this figure but offered no evidence of a different value. Because there was no lien on the farm at the time of divorce, the equity in

the farm at the time of divorce was the same as its fair market value.

The formula for calculating an economic contribution claim provided by section 3.403 does not appear to take into account a scenario like the Jordans in which both the community property estate and the other spouse's separate property estate make economic contributions.

For example, following the formula provided by section 3.403, a court should multiply the equity in the farm at the time of divorce ($20,040) times a fraction for which the numerator is the economic contribution by Donald's separate property estate ($4,860) and the denominator is the sum of: (a) the economic contribution by Donald's separate property estate ($4,860); (b) the net equity of the farm at the time they married ($1,582); and (c) the economic contribution of Marguerite's separate property estate ($0) after they married. *See* Tex. Fam.Code Ann. § 3.403(b), (b–1)(2). The result of this calculation establishes Donald's economic contribution to be $15,119 or about seventy-five percent of the farm's fair market value.[14]

But to calculate the community estate's economic contribution (one-half of which the trial court also included in the owelty lien awarded in Donald's favor), a court should multiply the equity in the farm at the time of divorce ($20,040) times a fraction for which the numerator is the economic contribution by the community property estate ($3,558) and the denominator is the sum of: (a) the economic contribution by the community property estate ($3,558); (b) the net equity of the farm at the time they married ($1,582); and (c) the economic contribution of Marguerite's sep-

arate property estate ($0) after they married. The result of this calculation establishes the community property estate's economic contribution to be $13,872 or about sixty-nine percent of the farm's fair market value.[15]

▇ Although these calculations are derived from a strict application of the statutory formula, they cannot be correct because they total more than one hundred percent. Although we must generally apply the plain language of a statute, we need not if that would lead to an absurd result. *See City of Rockwall v. Hughes*, 246 S.W.3d 621, 625–26 (Tex.2008). Therefore, we hold that, when two distinct marital estates make an economic contribution to a third marital estate, the amount of a claim for economic contribution is calculated by including the sums of the economic contributions made by both of the contributing marital estates in the denominator of the formula established by section 3.403(b) and (b–1).

Thus, to calculate the amount of the economic contribution by Donald's separate property estate, the court should multiply the equity in the farm at the time of divorce ($20,040) times a fraction for which the numerator is the economic contribution by Donald's separate property estate ($4,860) and the denominator is the sum of: (a) the economic contribution by Donald's separate property estate ($4,860); (b) the economic contribution by the community estate ($3,558); (c) the net equity of the farm at the time they married ($1,582); and (c) the economic contribution of Marguerite's separate property estate ($0) after they married. The result of this calcu-

14. Stated as a mathematical equation, this calculation would be:

$$\$20,040\left(\frac{\$4,860}{\$4,860 + \$1,582}\right) = \$15,119.$$

15. Stated as a mathematical equation, this calculation would be:

$$\$20,040\left(\frac{\$3,558}{\$3,558 + \$1,582}\right) = \$13,872.$$

lation establishes the amount of Donald's separate property economic contribution claim to be $9,739 or about forty-nine percent of the farm's fair market value.[16]

To calculate the amount of the economic contribution by the community property estate, the court should multiply the equity in the farm at the time of divorce ($20,040) times a fraction for which the numerator is the economic contribution by the community property estate ($3,558) and the denominator is the sum of: (a) the economic contribution by Donald's separate property estate ($4,860); (b) the economic contribution by the community estate ($3,558); (c) the net equity of the farm at the time they married ($1,582); and (c) the economic contribution of Marguerite's separate property estate ($0) after they married. The result of this calculation establishes the amount of the community estate's economic contribution claim to be $7,130 or about thirty-six percent of the farm's fair market value.[17]

Thus, under these calculations, Donald would be entitled to an economic contribution lien against the farm in the amount of $13,304, which represents the amount of his separate property estate's economic contribution claim and one-half of the community estate's economic contribution claim.

In summary, however, Donald failed to present sufficient evidence for the court to exercise its discretion in calculating the amount of his claim for economic contribution. We have engaged in various evidentiary assumptions based on the limited information available only to demonstrate the errors in the manner by which the amount of Donald's owelty lien was calculated. The figures we have employed are in no way binding on the parties or the trial court on remand. Accordingly, we hold that the court abused its discretion by imposing a $15,930 lien on Marguerite's separate property. Marguerite's fourth issue is sustained in part.

## Conclusion

Because we have sustained Marguerite's third and fourth issues in part, we do not reach her fifth issue regarding lack of notice. See Tex.R.App. P. 47.1 (appellate court's opinion must address every issue "necessary to final disposition of the appeal").

The divorce decree does not confirm the farm as Marguerite's separate property. The court abused its discretion by the manner in which it calculated the amount of Donald's economic contribution claim. Because the amount of this claim impacts the court's "just and right" division of the marital estate, we reverse the judgment and remand this cause to the trial court for further proceedings consistent with this opinion. See Tex. Fam.Code Ann. § 7.007(a) (Vernon 2006) (trial court "shall" take economic contribution claims

16. Stated as a mathematical equation, this calculation would be:

$$\$20{,}040\left(\frac{\$4{,}860}{\$4{,}860 + \$3{,}558 + \$1{,}582}\right) = \$9{,}739.$$

17. Stated as a mathematical equation, this calculation would be:

$$\$20{,}040\left(\frac{\$3{,}558}{\$4{,}860 + \$3{,}558 + \$1{,}582}\right) = \$7{,}130.$$

into account when dividing marital estate); *see also Fischer–Stoker v. Stoker,* 174 S.W.3d 272, 282 (Tex. App.–Houston [1st Dist.] 2005, pet. denied) ("Once reversible error affecting the 'just and right' division of the community estate is found, the court of appeals must remand the entire community estate for a new division.") (quoting *Jacobs v. Jacobs,* 687 S.W.2d 731, 733 (Tex. 1985)).

Chief Justice GRAY would affirm the judgment of the trial court. A separate opinion will not issue.