

IN THE
TENTH COURT OF APPEALS

No. 10-12-00179-CV

IN THE MATTER OF THE MARRIAGE OF
CARRIE RENEE BARROW-ALLEN AND WILLIAM HERBERT ALLEN
AND IN THE INTEREST OF P.C.B.-A., A CHILD

From the County Court at Law No. 2
Johnson County, Texas
Trial Court No. D200900001

## MEMORANDUM OPINION

Asserting three issues, Appellant Carrie Rene Barrow-Allen, who is appearing pro se on appeal, complains of the trial court's division of community property.

Carrie and Appellee William Herbert Allen (Herbert) married in 2004 and had one child, P., a son who was born in 2006. They each had children from prior relationships, and Carrie's older son (age 19 at the time of trial) lived with them and was supported by Herbert.

In 2005, they looked for and bought a house in Burleson. The house was purchased in the names of Herbert and his mother, Intervenor Marion Francis King (Fran), because of Carrie's low credit rating. Herbert and Fran used their combined

credit ratings to qualify for a mortgage to buy the house for a purchase price of $94,000. The deed names as grantees Herbert and Fran, who both signed the note to obtain the mortgage.

Soon after the house was bought, Carrie and Herbert discovered structural defects in the house. A lawsuit followed, and it was settled with Carrie and Herbert netting $9,000.00. It is undisputed that they offered to share the settlement with Fran, but she told them to keep all of it because they were behind on bills, including two mortgage payments. Carrie and Herbert used the money to pay bills and to buy Carrie a $1,600 tanning bed. They did not use any of the money to make repairs to the house.

In late December 2008, Herbert and Carrie separated, with Herbert moving out. A few days later, on January 6, 2009, Carrie filed for divorce, and almost two years later, in November 2011, Herbert filed a counter-petition for divorce.

On May 14, 2009, Fran filed a petition in intervention that asserted her co-ownership of the house (a one-half interest) and her payments of approximately $40,000 to maintain the house and to keep the mortgage current. She also asserted negligence claims against Carrie and Herbert regarding their care of the house. Fran sought partition of the house, and in a supplemental petition, she asserted claims for contribution and reimbursement against the marital estate.

Under initial agreed temporary orders in January 2009, Carrie was given exclusive use of the house and the exclusive right to designate P.'s residence. Carrie and P. lived in the house with Carrie's older son. Herbert agreed to pay $400 monthly in child support for P., $140 monthly in spousal support to Carrie, all household

expenses, all medical expenses, and auto insurance and car payments. Carrie was also given exclusive use of the Mercedes vehicle.

In July 2009, the trial court entered further temporary orders that increased Herbert's child support payment to $574 monthly, that continued the spousal support of $140 monthly, and that required him to pay the monthly mortgage payment ($875) and the electricity and water bills for the house. In August 2009, they entered into a Rule 11 agreement that maintained all of the things that Herbert had been required to pay, but it limited his payment of Carrie's medical expenses to 50%. Herbert was also paying $134 in monthly child support for a daughter in Oregon. He explained that, after deductions, the Mercedes payment, and child support deductions, his net bi-monthly paycheck was $1,100, which he used to make the house payment and to pay bills. If he could not pay a bill or the house payment, Fran helped make those payments.

Because of Carrie's numerous health problems and surgeries after she filed for divorce, which resulted in many scheduling conflicts, and because Carrie had four different lawyers during the case's pendency, trial did not begin until November 2011. The bench trial lasted three days and concluded on December 9, 2011, one month short of three years after suit was filed.

At the conclusion of the final hearing, the trial court found that the community owned one-half of the house and that Fran owned one-half, but it then awarded the entire house to Fran and ordered Carrie to vacate it by December 31. The trial court otherwise made a property division between Carrie and Herbert. On Carrie's request,

the trial court entered findings of fact and conclusions of law. This appeal followed.

Carrie's third issue asserts that the trial court erred in awarding the house to Fran. More specifically, she contends that the trial court erred in finding that Fran legally owned a one-half interest in the house and that the trial court should have found that the community estate owned 100% of the house. Carrie also contends that the trial court erred in divesting the community estate of its one-half interest in the house and awarding it to Fran.

Herbert does not complain about the trial court's award of the house to Fran and the assessment against him for half of the mortgage balance; he supports those rulings in his brief. Fran's and Herbert's briefs are identical.

As noted above, because of Carrie's poor credit, Herbert and Fran applied for the mortgage loan on the house, and they are each liable on the note. Herbert and Fran are the grantees in the deed. Carrie testified that she did not know why her name was not on the deed, and she did not know if they could have bought the house without Fran's help. Herbert said that they could not have bought it without Fran's assistance.

The purchase price was $94,000, and the $4,050 down payment was a gift from a charity for first-time homebuyers. Herbert believed that he owned one-half of the house and that Fran owned one-half, and he said that was also Carrie's belief when they bought the house. He asked the trial court to award him the "community property portion" of the house, along with its debt, but also testified that it would be fair if the trial court awarded the house to Fran.

Herbert said that, if the house were in good shape, it could be sold for $70,000,

based on comparables he had looked at, but the house was not in good condition. In addition to not being maintained for several years, wallpaper had been pulled down, the carpet was stained, and there were holes in the walls. Part of the reason for the house's poor condition was that two large dogs (mastiffs) were living in it; they had stained the carpet and baseboards and made scratches in the paint, and the house "smells like animals." Herbert thought that the house needed repairs in the range of $20,000 to $30,000 and, without repairs, they would be "lucky" to sell it for $45,000 or $50,000. Because the mortgage balance was, according to Fran, $84,000, Herbert said that they were "upside down" on the house.

Fran also testified that, based on comparables, the house's value was $70,000 if in good condition, but it was in poor condition—"an absolute wreck"—because of mold and dog odor, among other things. Many photos of the house's poor condition were in evidence. If sold as-is, Fran opined that the house could maybe sell for $50,000. Fran said that she wanted to be awarded the house because it was a liability to her and she wanted to be able to fix it up.

In Fran's proposal to the trial court, she stated that she owned one-half of the house and that Carrie and Herbert owned one-fourth each (or one-half). Fran testified that she paid for a new air conditioner for the house in the amount of $4,500 and that she had made many of the mortgage payments and utility bills for the house. She presented a summary to the trial court that included a spreadsheet showing that she made over a dozen mortgage payments, both before and after Carrie and Herbert's separation, totaling over $10,000, and that she had paid approximately $3,500 in utility

bills, all after the separation.

Carrie testified that, in her opinion, she, Herbert, and Fran each owned one-third of the house. Carrie testified that she wanted the trial court to award the house and its debt to Herbert, but she wanted to be paid $10,000 for her community interest in the house.

The trial court found that the house was purchased during the marriage and that the marital estate owned a one-half interest (with Carrie and Herbert each owning a one-fourth interest)[1] and Fran owned a one-half interest.[2] The trial court further found that Carrie and Herbert had "no net equity" in the house because of its condition and market value at that time of $65,000 to $70,000, relative to the mortgage balance then of $84,000. In conclusion, the trial court found that Fran's contributions (in excess of $20,000) to Carrie and Herbert during their marriage were sufficient to entitle Fran to Carrie and Herbert's one-half community interest in the house. Thus, Fran was awarded a 100% equitable interest in the house, and Herbert was ordered to transfer the one-half community interest to Fran.

Carrie argues in her brief that the community estate owned 100% of the house. She cites no evidence in support of that argument, and she fails to address Fran's actual ownership interest based on the deed, Fran's liability on the mortgage loan, Fran's many mortgage payments, and her own testimony that Fran owned one-third of the

---

[1] In the portion of the final decree dealing with the house, the trial court found that Carrie "has no community interest in the property." It is unclear if that finding is a result of the decree's ordering Herbert to transfer his interest in the house to Fran. If it is not such a result, it is inconsistent with the trial court's finding that Herbert's one-half interest was a community interest.

[2] Herbert does not complain of this finding on appeal.

house. And other than general citations to chapter 3 of the Family Code, Carrie cites no supporting authority for her claim that Fran had no actual legal ownership.

The trial court correctly found that a one-half interest in the house was community property. *See* TEX. FAM. CODE ANN. § 3.002 (West 2006). The house was acquired during the marriage, and the house payments that Herbert and Carrie did make were made with their earnings. On appeal, neither Herbert nor Fran contests the trial court's finding that Herbert and Carrie had a one-half community interest in the house. Accordingly, while Carrie is correct that Herbert's interest in the house was a community-property interest, it was only a one-half interest in the house, not 100%.

Carrie is also correct that Fran had no claim under Texas law that allowed the trial court to divest the marital estate of its one-half community interest in the house and award it to Fran. Under Texas law at the time this case was filed in January 2009, a *spouse* could make a claim against the other spouse for reimbursement and contribution.[3] *See* Act of May 28, 2003, 78th Leg., R.S., ch. 230, § 1, 2003 Tex. Gen Laws 1056-57 (previously codified at TEX. FAM. CODE ANN. § 3.403; Act of May 18, 2001, 77th Leg., R.S., ch. 838, § 2, 2001 Tex. Gen Laws 1679, 1682 (previously codified at TEX. FAM. CODE ANN. § 3.408; current version at TEX. FAM. CODE ANN. § 3.402 (West Supp. 2013)); *see also* TEX. FAM. CODE ANN. § 3.406 (West Supp. 2013) (providing that court may impose equitable lien on benefited marital estate to secure reimbursement claim by *contributing marital estate*); *id.* § 7.007 (West Supp. 2013) (providing for court to

---

[3] The amendments to the statutes pertaining to reimbursement and contribution claims in subchapter E of chapter 3, which took effect September 1, 2009, were not applicable to this suit. Act of May 29, 2009, 81st Leg., R.S., ch. 768, §§ 13, 15, 2009 Tex. Gen Laws 1950, 1953.

determine rights of both *spouses* in reimbursement claim under subchapter E of chapter 3).  But no law allowed for the assertion of such claims by a third party against the marital estate, and Fran and Herbert cite no law that would allow such a claim by Fran and that allowed the trial court to award the marital community estate's interest in the house to Fran.[4]

Therefore, we sustain in part Carrie's third issue.  We reverse the trial court's decree concerning the division of community property and debt.  Because the error impacts the trial court's "just and right" division of the community estate, we must remand the entire community estate for a new division.  *See In re Marriage of Jordan*, 264 S.W.3d 850, 863-64 (Tex. App.—Waco 2008, no pet.).

In her first two issues, Carrie contends that the trial court abused its discretion in dividing the marital estate.  Because we must remand the entire community estate for a new division, we need not address Carrie's first two issues.

This case is reversed in part and remanded for further proceedings consistent with this opinion.  We otherwise affirm the trial court's final decree.


REX D. DAVIS
Justice

Before Chief Justice Gray,
     Justice Davis, and
     Justice Scoggins
Reversed and remanded
Opinion delivered and filed June 26, 2014
[CV06]

---

[4] The trial court could have awarded the community's interest in the house to either Herbert or Carrie.