

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

———————————————————

No. 02-23-00361-CV

———————————————————

NATASHA SLOAN, Appellant

V.

JASON SLOAN, Appellee

On Appeal from the 367th District Court
Denton County, Texas
Trial Court No. 22-5691-367

Before Sudderth, C.J.; Bassel and Womack, JJ.
Memorandum Opinion by Justice Womack

## MEMORANDUM OPINION

## I. INTRODUCTION

After the trial court entered a final divorce decree that ended the marriage between Appellant Natasha Sloan (Wife) and Appellee Jason Sloan (Husband) and that divided the parties' community estate, Wife appealed and challenged certain aspects of the trial court's property division. In three issues—the third of which contains several sub-issues—Wife complains that (1) the trial court abused its discretion by "making a division of community property that is manifestly unfair in favor of Husband," (2) the trial court abused its discretion by finding that certain of the parties' real property is "mixed" separate and community property, and (3) certain of the trial court's amended findings of fact and conclusions of law are not supported by evidence of probative force. We will affirm in part and reverse and remand in part.

## II. BACKGROUND

### A. Husband and Wife's Marriage and Husband's Purchase of the Florida Property Prior to the Marriage

Husband and Wife married on April 12, 2008.[1] Five years prior to their marriage, Husband had purchased a house in Florida (the Florida Property). Husband was the only grantee listed on the deed to the Florida Property. After they got

---

[1]Husband and Wife have two children. The trial court's divorce decree set forth the parties' rights and duties regarding the children. These portions of the decree concerning the children are not challenged on appeal; rather, the appeal is composed of Wife's challenge to the property division set forth in the decree.

2

married, Husband and Wife lived together at the Florida Property, but Wife's name was never added on the deed.

At the time they were married, the balance of the mortgage on the Florida Property was approximately $197,000 (the Old Mortgage on the Florida Property). The Old Mortgage on the Florida Property was paid off in April 2014. That same month, Husband obtained a new mortgage on the Florida Property in the amount of $205,000 (the New Mortgage on the Florida Property). Notably, only husband was identified as the "Borrower" within the body of the New Mortgage on the Florida Property, although both Husband and Wife signed under the label "Borrower."[2]

## B. The Sale of the Florida Property and the Deposit of the Sales Proceeds into the Parties' Joint Wells Fargo #7380 Savings Account

In July 2017, Husband sold the Florida Property for $346,500. At the time of the sale, the remaining balance on the New Mortgage on the Florida Property was $171,431.77. After closing on the sale, Husband deposited the net sales proceeds—which totaled $172,710.60—into the parties' joint Wells Fargo #7380 savings account.[3] Prior to that deposit, the Wells Fargo #7380 account had a balance of $30,352.28.

---

[2]The term "Borrower" was defined in the New Mortgage on the Florida Property as "Jason Sloan."

[3]A bank statement from the Wells Fargo #7380 account reflects that the deposit was made on July 17, 2017.

**C. Husband's Darden Retirement Benefits, the Deposit of Those Benefits into the Parties' Joint Wells Fargo #1119 Checking Account, and the Transfer from that Account into the Wells Fargo #7380 Account**

Prior to his marriage, Husband worked for Darden Restaurants.[4] As a result of that employment, Husband owned certain Darden retirement benefits.[5] On April 20, 2017, Husband deposited $60,737.26 of his Darden retirement benefits into the parties' joint Wells Fargo #1119 checking account.[6] Four days later, $30,237.26 was transferred from the Wells Fargo #1119 account into the Wells Fargo #7380 account, while $30,500 was transferred from the Wells Fargo #1119 account into a different account for the purpose of paying down Wife's student loans.[7]

**D. Husband and Wife's Move to Texas, Their Purchase of the Texas Property, and the Payments Made Relating to the Purchase of the Texas Property**

In 2016, Husband and Wife moved to Texas. That same year, they began construction on a home in Frisco, Texas (the Texas Property). From May 2017 through December 2017, Husband made several payments to Highland Homes—the builder of the Texas Property—relating to the construction of the Texas Property.

---

[4]Husband's employment with Darden ended the year before he married Wife.

[5]Wife admitted that Husband "owned 401(k) Darden Stocks prior to [their] marriage in 2008."

[6]Wife admitted that "the proceeds from the sale of the 401(k) Darden Stocks in the amount of $60,737.26[] was deposited into the Wells Fargo Essential Checking Account ending in x1119 on April 20, 2017."

[7]An April 2017 bank statement for the Wells Fargo #1119 account was admitted into evidence at trial.

Specifically, several checks made from Husband to Highland Homes were admitted into evidence at trial. In this regard, the record reflects that the following payments were made by Husband to Highland Homes from Husband's Martin Marietta #0909 account:[8]

- a payment of $9,575 by check dated May 22, 2017;

- a payment of $14,404 by check dated August 13, 2017;

- a payment of $8,350 by check dated September 1, 2017;

- a payment of $9,500 by check dated October 13, 2017; and

- a payment of $4,000 by check dated December 7, 2017.

Around the same time that Husband made payments to Highland Homes from his Martin Marietta #0909 account, he also made several transfers of money from the Wells Fargo #7380 account into the Martin Marietta #0909 account. At trial, bank statements from the Wells Fargo #7380 account were admitted into evidence reflecting the following transfers from the Wells Fargo #7380 account into the Martin Marietta #0909 account:[9]

---

[8]Some parts of the record reflect that the #0909 account is associated with "Martin Marietta Credit Union," while other parts of the record reflect that the #0909 account is associated with "MidFlorida Credit Union." For ease of reference, we will refer to this account as the Martin Marietta #0909 account. The record does not contain any bank statements for the Martin Marietta #0909 account.

[9]As to the Wells Fargo #7380 account, bank statements for the following months were admitted into evidence at trial: April 2017, July 2017, August 2017, December 2017, and March 2018.

- a transfer of $5,000 dated July 17, 2017;

- a transfer of $15,000 dated August 8, 2017;

- a transfer of $10,000 dated August 14, 2017;

- a transfer of $15,000 dated December 1, 2017;

- a transfer of $5,000 dated December 1, 2017; and

- a transfer of $10,000 dated December 6, 2017.[10]

The record also reflects that on or about March 14, 2018, Husband transferred $19,500 from the Martin Marietta #0909 account into the Wells Fargo #7380 account.

Apart from the payments made by Husband to Highland Homes from the Martin Marietta #0909 account, the record also contains a copy of a cashier's check dated December 15, 2017, through which Husband paid Highland Homes $9,000.[11] That same day, Husband withdrew $9,000 from the parties' Wells Fargo #7380 account, ostensibly for the purpose of funding the cashier's check.

---

[10]A document drafted by Husband purporting to summarize pertinent financial transactions concerning his separate property was admitted into evidence at trial as a summary of his testimony. That document purports to show three additional transfers from the Wells Fargo #7380 account into the Martin Marietta #0909 account: (1) a transfer of $10,000 dated September 15, 2017; (2) a transfer of $15,000 dated October 18, 2017; and (3) a transfer of $10,000 dated October 19, 2017. However, the record does not contain any bank statements or other documentation substantiating those transfers.

[11]Husband was listed as the "Purchaser" of the cashier's check.

The parties closed on their purchase of the Texas Property in March 2018. The sales price for the purchase of the Texas Property was $1,024,785, and the purchase was financed by a mortgage on the property (the Mortgage on the Texas Property). Only Husband's name was listed on the Mortgage on the Texas Property. Apart from that mortgage, the parties were also required to pay $129,657.75 in cash for the Texas Property at closing. A bank statement from the Wells Fargo #7380 account reflects that on March 23, 2018, $129,657.75 was withdrawn from the account. The record further reflects that on that same day, Husband purchased a cashier's check in the amount of $129,657.75 payable to Old Republic Title, the settlement agent for the closing on the Texas Property.

Husband testified that the parties' income at the time they purchased the Texas Property was "slightly ahead but pretty much break even" when compared to their expenses. Husband further testified that the parties did not have any "excess cash" for the purchase of the Texas Property, apart from the funds from the sale of the Florida Property.

## E. Procedural History

In 2022, Husband filed a petition for divorce against Wife. In his live petition, Husband requested, among other things, that the trial court confirm his separate property and that it reimburse his separate estate for funds expended by it for the benefit of the community estate. Husband also indicated that he had a separate property claim against the Texas Property, asserting that the Texas Property is of

7

"mixed character as a result of separate property funds used in the purchase of [the Texas Property]." Husband further requested that he be awarded a disproportionate share of the parties' community estate.

Wife answered Husband's petition, and she later filed a counterpetition for divorce. In her live counterpetition, Wife requested, among other things, that the trial court confirm her separate property and that she be awarded a disproportionate share of the parties' community estate. Wife did not, however, make any reimbursement claim for any funds expended by her separate estate for the benefit of the community estate.

The trial court conducted a six-day bench trial in 2023 pertaining to the parties' respective divorce filings. During trial, Wife moved for judgment on Husband's separate property reimbursement claim. The trial court denied Wife's motion for judgment on that claim. Following trial, the trial court signed a memorandum ruling, and it later signed a final divorce decree. In the decree, the trial court, among other things, did the following;

- ordered and decreed that Husband and Wife are divorced;

- awarded the Texas Property to Husband as part of its just and right division of the parties' marital estate;

- ordered that Husband was to pay the Mortgage on the Texas Property and indemnify Wife for any failure to pay it;

- ordered that Husband "shall refinance [the Texas Property] within 120 days if [Wife] is named as a borrower on the Real Estate Note

8

for the purchase of [the Texas Property] for the purpose of removing [Wife] as an obligor on the real estate note" and ordered that the Texas Property "shall be sold" in the event that Wife "is not removed from any mortgage indebtedness on [the Texas Property]";

- awarded certain "Luxury Apparel Items" to Wife as part of its just and right division of the parties' marital estate;

- confirmed that Husband has a separate property interest in the Texas Property related to the "mixed" character of that property;

- ordered that, "[t]o effect[uate] an equitable division of the estate of the parties and as a part of the division . . . each party shall be responsible for his or her own attorney's fees, expenses, and costs incurred as a result of legal representation in this case"; and

- denied all relief requested in the case that was not expressly granted, specifically including Husband's claims for reimbursement.[12]

Wife filed a motion to reconsider and a motion for new trial, both of which were denied by the trial court. Wife also requested that the trial court make findings of fact and conclusions of law, which the trial court later made. Wife filed an objection to the trial court's findings of fact and conclusions of law, and she requested that the trial court make additional findings and conclusions. The trial court later made amended findings of fact and conclusions of law, attaching a property division

_____

[12]The trial court later signed an order clarifying the divorce decree. In that order, the trial court clarified that a prior order awarding Wife spousal maintenance of $12,000 was to be recharacterized as an equalization of community property rather than an award of spousal maintenance.

9

spreadsheet to them.[13]  In the trial court's amended findings of fact and conclusions of law, the trial court found, among other things, that:

- Wife had admitted that, prior to their marriage, Husband had owned the Florida Property and the Darden retirement benefits;

- the evidence established that Husband had liquated his Darden retirement benefits;

- the evidence established that Husband had received $172,710.60 in net proceeds from the sale of the Florida Property;

- the evidence established that the combined proceeds from the sale of the Florida Property and the liquidation of Husband's Darden retirement benefits totaled $233,447.86;

- the evidence established that "the income of the parties was less than the monthly expenditures of the parties and did not allow for any savings for the construction of [the Texas Property] other than the separate property funds of [Husband]" from the sale of the Florida Property and the liquidation of his Darden retirement benefits;

- the evidence established that Husband's separate property funds were used for the payment of construction costs and the closing on the Texas Property;

- Husband had established by clear and convincing evidence that the Texas Property is of "mixed" character and that he had established by clear and convincing evidence a separate property claim related to the "mixed" character of the Texas Property;

---

[13]With respect to that spreadsheet, the trial court stated, "The Court finds that the total community assets and debts awarded to the parties with the values supported by the evidence in this cause are set forth within [the attached property division spreadsheet]."

10

- Husband had a separate property interest of 16.85% in the Texas Property that was valued at $218,424.53;

- the Texas Property would have closing costs of 8% of the total sales price if sold (totaling $103,703.04);

- the community estate's interest in the Texas Property was valued at $209,963.98;

- Husband should be awarded the Texas Property as part of the trial court's just and right division of the parties' property;

- Husband should be liable for the Mortgage on the Texas Property as part of the trial court's just and right division of the parties' property;

- Wife had established a separate property interest of $20,000 in certain "Luxury Apparel Items" and that the community interest in certain other "Luxury Apparel Items" was valued at $50,000;

- Wife should be awarded the entirety of the "Luxury Apparel Items" as part of the trial court's just and right division of the parties' property;

- each party shall pay their own attorney's fees and costs with the exception that Husband should repay a certain loan from Wife's mother for attorney's fees; and

- the remaining debt caused by Wife's attorney's fees was $31,538.85.[14]

---

[14]Several of these findings derive from the property division spreadsheet that was attached to the trial court's amended findings and conclusions. Specifically, the property division spreadsheet reflected: (1) the percentage of Husband's separate property interest in the Texas Property and the value of that interest, (2) the amount of closing costs on the Texas Property if sold, (3) the value of the community estate's interest in the Texas Property, (4) the respective values of Wife's separate property interest in and the community estate's interest in the "Luxury Apparel Items," and (5) the value of the remaining debt caused by Wife's attorney's fees.

Wife appeals from the trial court's final divorce decree.

### III. DISCUSSION

#### A. Standard of Review

Most of the appealable issues in a family-law case, including property division incident to a divorce, are reviewed for an abuse of discretion. *Touponse v. Touponse*, No. 02-20-00285-CV, 2021 WL 2753504, at *3 (Tex. App.—Fort Worth July 1, 2021, no pet.) (mem. op.); *Lathe v. Lathe*, No. 01-18-00936-CV, 2020 WL 4118021, at *3 (Tex. App.—Houston [1st Dist.] July 21, 2020, no pet.) (mem. op.). A trial court abuses its discretion if it acts arbitrarily or unreasonably or if it does not analyze or apply the law properly. *Iliff v. Iliff*, 339 S.W.3d 74, 78 (Tex. 2011); *Morin v. Morin*, No. 02-23-00349-CV, 2024 WL 2854875, at *2 (Tex. App.—Fort Worth June 6, 2024, no pet.) (mem. op.). The trial court has broad discretion in dividing the marital estate, and we must indulge every reasonable presumption in favor of the trial court's proper exercise of its discretion. *Lathe*, 2020 WL 4118021, at *3; *see Touponse*, 2021 WL 2753504, at *3 (stating that we are to "presume that [the trial court] exercised its discretion properly" in dividing a marital estate).

In family-law cases, the traditional sufficiency standards of review do not constitute independent grounds of error but are relevant factors in our assessment of whether the trial court abused its discretion. *Hamilton v. Hamilton*, No. 02-19-00211-CV, 2020 WL 6498528, at *3 (Tex. App.—Fort Worth Nov. 5, 2020, no pet.) (mem.

op.); *Logsdon v. Logsdon*, No. 02-14-00045-CV, 2015 WL 7690034, at *3 (Tex. App.—Fort Worth Nov. 25, 2015, no pet.) (mem. op.). To determine whether a trial court abused its discretion because the evidence is legally or factually insufficient to support the trial court's decision, we must determine whether the trial court (1) had sufficient evidence upon which to exercise its discretion and (2) erred in its application of that discretion. *Hamilton*, 2020 WL 6498528, at *3; *Logsdon*, 2015 WL 7690034, at *3.

The applicable sufficiency review—whether based on legal[15] or factual[16] sufficiency—comes into play with regard to the first prong.[17] *Lathe*, 2020 WL

---

[15]Evidence is legally insufficient only when (1) there is a complete absence of a vital fact, (2) the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact, (3) the evidence offered to prove a vital fact is no more than a scintilla, or (4) the evidence conclusively establishes the opposite of a vital fact. *Gunn v. McCoy*, 554 S.W.3d 645, 658 (Tex. 2018); *Watson v. Watson*, 286 S.W.3d 519, 523 (Tex. App.—Fort Worth 2009, no pet.). In a legal sufficiency review, we must consider evidence favorable to the finding if a reasonable factfinder could and disregard evidence contrary to the finding unless a reasonable factfinder could not. *Cent. Ready Mix Concrete Co. v. Islas*, 228 S.W.3d 649, 651 (Tex. 2007); *Watson*, 286 S.W.3d at 523. We must also review all of the evidence in the light most favorable to the finding. *Gunn*, 554 S.W.3d at 658; *Watson*, 554 S.W.3d at 658.

[16]When reviewing an assertion that the evidence is factually insufficient to support a finding, we set aside the finding only if, after considering and weighing all the pertinent record evidence, we determine that the credible evidence supporting the finding is so weak, or so contrary to the overwhelming weight of all the evidence, that the finding should be set aside and a new trial ordered. *Pool v. Ford Motor Co.*, 715 S.W.2d 629, 635 (Tex. 1986) (op. on reh'g); *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986); *Garza v. Alviar*, 395 S.W.2d 821, 823 (Tex. 1965).

[17]In any sufficiency review, the factfinder is the sole judge of witness credibility and evidentiary weight. *Cowden v. Cowden*, No. 02-23-00054-CV, 2023 WL 8267696, at *5 (Tex. App.—Fort Worth Nov. 30, 2023, no pet.) (mem. op.); *Lee v. Hoover*, No. 11-22-00201-CV, 2023 WL 6466647, at *3 (Tex. App.—Eastland Oct. 5, 2023, no pet.)

4118021, at *3; *Logsdon*, 2015 WL 7690034, at *3. When, as here, the trial court files findings of fact and conclusions of law, the fact-findings have the same force and dignity as a jury's answers to jury questions. *Morin*, 2024 WL 2854875, at *2; *see Logsdon*, 2015 WL 7690034, at *3. As to the second prong, we consider whether, based on the evidence, the trial court made a reasonable decision. *Cowden*, 2023 WL 8267696, at *4; *Lathe*, 2020 WL 4118021, at *3. A trial court does not abuse its discretion if there is at least some evidence of a substantive and probative character to support the decision. *Cowden*, 2023 WL 8267696, at *4; *Lathe*, 2020 WL 4118021, at *3.

## B. Whether the Texas Property is "Mixed" Separate and Community Property

In her second[18] issue, Wife argues that the trial court abused its discretion by finding that the Texas Property is "mixed" separate and community property.

### 1. Applicable Law

Under Texas law, property owned before marriage—or acquired during marriage by gift, devise, or descent—is separate property and remains the spouse's

---

(mem. op.). In conducting our review of the sufficiency of the evidence, we may not substitute our judgment for that of the factfinder. *Cowden*, 2023 WL 8267696, at *5; *Lee*, 2023 WL 6466647, at *3. The factfinder may choose to believe all, some, or none of a witness's testimony. *Cowden*, 2023 WL 8267696, at *5; *Lee*, 2023 WL 6466647, at *3.

[18]We will address Wife's issues out of order because many of her arguments hinge on her second issue. We will thus begin with her second issue, then we will address her third issue and its various sub-issues, and then we will address her first issue.

separate property during and after the marriage. *Teneyck v. Teneyck*, No. 02-22-00437-CV, 2023 WL 5615873, at *7 (Tex. App.—Fort Worth Aug. 31, 2023, no pet.) (mem. op.) (first citing Tex. Const. art. XVI, § 15; and then citing Tex. Fam. Code Ann. § 3.001). A trial court has no discretion to divest a party of his or her separate property through a divorce decree. *Id.* Only community property is subject to a trial court's just and right division in a divorce proceeding. *Perez v. Perez*, No. 01-22-00290-CV, 2023 WL 3235831, at *9 (Tex. App.—Houston [1st Dist.] May 4, 2023, no pet.) (mem. op.); *Barnard v. Barnard*, 133 S.W.3d 782, 789 (Tex. App.—Fort Worth 2004, pet. denied).

Generally, all property possessed by either spouse during or on dissolution of the marriage is presumed to be community property. *Chi Hua Lee v. Linh Hoang Lee*, No. 02-18-00006-CV, 2019 WL 3024478, at *4 (Tex. App.—Fort Worth July 11, 2019, no pet.) (mem. op.) (citing Tex. Fam. Code Ann. § 3.003(a)). This is a rebuttable presumption; a spouse claiming that any asset is separate property must prove the separate character of the property by clear and convincing evidence.[19]

---

[19]"Clear and convincing" evidence gives the trier of fact a firm belief or conviction that the allegations sought to be established are true. Tex. Fam. Code Ann. § 101.007. This intermediate standard of proof falls between the preponderance standard that applies to most civil proceedings and the reasonable-doubt standard that applies to most criminal proceedings. *In re G.M.*, 596 S.W.2d 846, 847 (Tex. 1980); *Chi Hua Lee*, 2019 WL 3024478, at *4. Clear and convincing evidence must outweigh evidence that would satisfy the preponderance standard, but it need not be unequivocal or undisputed. *State v. Addington*, 588 S.W.2d 569, 570 (Tex. 1979); *Chi Hua Lee*, 2019 WL 3024478, at *4.

*Teneyck*, 2023 WL 5615873, at *7 (citing Tex. Fam. Code Ann. § 3.003(b)). We determine whether property is community or separate by its character at the time of inception. *Id.* "Inception of title occurs when a party first has a right of claim to the property by virtue of which title is finally vested." *Boyd v. Boyd*, 131 S.W.3d 605, 612 (Tex. App.—Fort Worth 2004, no pet.).

To overcome the community presumption, the spouse claiming certain property as separate has the burden to trace and clearly identify the property claimed to be separate. *Chi Hua Lee*, 2019 WL 3024478, at *4; *Boyd*, 131 S.W.3d at 612. The burden of tracing is a difficult—but not impossible—burden to sustain. *Chi Hua Lee*, 2019 WL 3024478, at *4; *Boyd*, 131 S.W.3d at 612. "Tracing involves establishing the property's separate origin through evidence showing the time and means by which the spouse originally obtained possession of the property." *Teneyck*, 2023 WL 5615873, at *7 (citing *Boyd*, 131 S.W.3d at 612). Separate property will retain its character through a series of exchanges so long as the party claiming separate ownership can overcome the presumption of community property by tracing the assets on hand during the marriage back to property that—because of its time and manner of acquisition—is separate in character. *Chi Hua Lee*, 2019 WL 3024478, at *4; *Boyd*, 131 S.W.3d at 612. "Thus, even if an account contains both community and separate funds, the separate funds do not lose their character if they can be traced so that the trial court can determine each party's interest accurately." *S.T. v. H.K.*, No. 02-21-00408-CV, 2023 WL 2607751, at *12 (Tex. App.—Fort Worth Mar. 23, 2023, pet. denied) (mem.

16

op.). "However, if the evidence shows that separate and community property have been so commingled as to defy resegregation and identification, the community presumption prevails." *Chi Hua Lee*, 2019 WL 3024478, at *4; *Boyd*, 131 S.W.3d at 612.

Generally, mere testimony that property was purchased with separate funds, without any tracing of the funds, is insufficient to rebut the community presumption. *S.T.*, 2023 WL 2607751, at *12; *Boyd*, 131 S.W.3d at 612. Any doubt as to the character of the property should be resolved in favor of the community estate. *S.T.*, 2023 WL 2607751, at *12; *Chi Hua Lee*, 2019 WL 3024478, at *4.

### 2. Analysis

Wife argues that the trial court abused its discretion by finding that the Texas Property is "mixed" separate and community property. Wife contends that the trial court abused its discretion because (1) the Texas Property is presumptively community property, (2) Husband failed to trace his separate property by clear and convincing evidence, and (3) there is no evidence that the parties intended the Texas Property to be Husband's separate property.

We agree, as does Husband, that the Texas Property is presumptively community property because it was purchased during the parties' marriage. *See* Tex. Fam. Code Ann. § 3.003(a). We thus turn to whether Husband proved by clear and convincing evidence a separate property interest in the Texas Property. *See Chi Hua Lee*, 2019 WL 3024478, at *4; *Boyd*, 131 S.W.3d at 612.

Here, Husband testified that he had purchased the Florida Property prior to his marriage to Wife, and a copy of the deed to the Florida Property was admitted into evidence. Wife's name was not listed on the deed to the Florida Property, nor was it ever added to the deed. Thus, the Florida Property was Husband's separate property.[20] *See* Tex. Fam. Code Ann. § 3.003; *Teneyck*, 2023 WL 5615873, at *7. On July 17, 2017—after the Florida Property was sold—Husband deposited the $172,710.60 of net sales proceeds into the Wells Fargo #7380 account.

The record further reflects that on April 20, 2017, Husband deposited $60,737.26 of his Darden retirement benefits into the Wells Fargo #1119 account.[21] Four days later, he transferred $30,237.26 from that account into the Wells Fargo

---

[20]In her brief, Wife seems to suggest that at least part of the Florida Property should be considered community property, contending that "the parties paid $33,568.23 from their community earnings" to reduce the New Mortgage on the Florida Property. But those payments do not change the underlying character of the Florida Property, although they could give rise to a reimbursement claim of any community funds paid toward the New Mortgage on the Florida Property. *See In re Marriage of Jordan*, 264 S.W.3d 850, 856 (Tex. App.—Waco 2008, no pet.) ("The fact that the home was refinanced during the marriage does not change its character as separate property although the refinancing may give rise to a claim for economic contribution or reimbursement of any community funds paid toward the refinanced debt."), *overruled on other grounds by In re Marriage of Ramsey & Echols*, 487 S.W.3d 762 (Tex. App.—Waco 2016, pet. denied). Wife, however, did not plead a reimbursement claim.

[21]Prior to those deposits, the Wells Fargo #1119 account had a balance of $500.00.

18

#7380 account.[22] Thus, there is clear and convincing evidence establishing that Husband transferred $202,947.86[23] of his separate property into the Wells Fargo #7380 account in mid-2017 (i.e., the July 17, 2017 deposit of $172,710.60 stemming from the sale of the Florida Property plus the April 24, 2017 transfer of $30,237.26 stemming from the liquidation of his Darden retirement benefits), and that property will not lose its status as separate property merely because it was placed in an account containing community funds.  *See Zagorski v. Zagorski*, 116 S.W.3d 309, 319 (Tex. App.—Houston [14th Dist.] 2003, pet. denied) (op. on reh'g) ("A showing of community and separate funds existing in the same account does not divest the separate funds of their identity and establish the entire amount as community when the separate funds may be traced and the trial court is able to determine accurately the interest of each party.").

The evidence further establishes that from July 2017 through December 2017, Husband transferred $60,000 from the Wells Fargo #7380 account into the Martin Marietta #0909 account.  In this regard, bank statements from the Wells Fargo #7380

---

[22]Prior to that transfer, the Wells Fargo #7380 account had a balance of $12,843.00.

[23]The evidence reflecting the transfers of Husband's separate property funds into the Wells Fargo #7380 account is more than "mere testimony."  *See S.T.*, 2023 WL 2607751, at *12; *Boyd*, 131 S.W.3d at 612.  The evidence consists of bank statements from the Wells Fargo #7380 account and the Wells Fargo #1119 account.

19

account show that the following transfers occurred from that account into the Martin Marietta #0909 account:

- a transfer of $5,000 dated July 17, 2017;

- a transfer of $15,000 dated August 8, 2017;

- a transfer of $10,000 dated August 14, 2017;

- a transfer of $15,000 dated December 1, 2017;

- a transfer of $5,000 dated December 1, 2017; and

- a transfer of $10,000 dated December 6, 2017.

Around that same time, Husband made $45,829 in payments to Highland Homes from the Martin Marietta #0909 account. To that end, the record contains copies of checks reflecting that the following payments were made by Husband to Highland Homes from the Martin Marietta #0909 account:

- a payment of $9,575 by check dated May 22, 2017;

- a payment of $14,404 by check dated August 13, 2017;

- a payment of $8,350 by check dated September 1, 2017;

- a payment of $9,500 by check dated October 13, 2017; and

- a payment of $4,000 by check dated December 7, 2017.

The record also contains documentation reflecting that Husband paid Highland Homes $9,000 via a cashier's check on December 15, 2017, and that the Wells Fargo #7380 account was used to fund that cashier's check. Further, the record reflects that

on March 28, 2018, Husband paid Old Republic Title $129,657.75 via cashier's check in order to close on the Texas Property and that the Wells Fargo #7380 account was used to fund that cashier's check.

Thus, the record shows that Husband transferred $202,947.86 of his separate property into the Wells Fargo #7380 account in mid-2017. Around that same time, and culminating in the March 2018 purchase of the Texas Property, Husband made $184,486.75 in payments toward the Texas Property (i.e., the $45,829 payments to Highland Homes from the Martin Marietta #0909 account, plus the $9,000 payment via cashier's check to Highland Homes, plus the $129,657.75 cashier's check to Old Republic Title). Those payments were made either directly from the Wells Fargo #7380 account or were made from the Martin Marietta #0909 account around the same time that $60,000 was transferred into that account from the Wells Fargo #7380 account. Moreover, Husband testified that at the time they purchased the Texas Property, Husband's and Wife's income was "slightly ahead but pretty much break even" when compared to their expenses and that they did not have any "excess cash" for the purchase of the Texas Property apart from using his separate property.[24]

---

[24]The trial court found that the evidence established that "the income of the parties was less than the monthly expenditures of the parties and did not allow for any savings for the construction of [the Texas Property] other than the separate property funds of [Husband]" from the sale of the Florida Property and the liquidation of his Darden retirement benefits. Because Wife does not challenge that finding on appeal, it is binding. *See Scott Pelley P.C. v. Wynne*, No. 05-15-01560-CV, 2017 WL 3699823, at *9 (Tex. App.—Dallas Aug. 28, 2017, pet. denied) (mem. op.) ("Because [the appellant] does not challenge these findings of fact on appeal they are binding."); *Main*

21

Viewing the evidence in the light most favorable to the trial court's ruling and indulging every reasonable presumption in favor of the trial court's ruling, we hold that there is clear and convincing evidence to establish that Husband traced $184,486.75 of his separate property into the purchase of the Texas Property.[25]  *See*

*Place Custom Homes, Inc. v. Honaker*, 192 S.W.3d 604, 615 (Tex. App.—Fort Worth 2006, pet. denied) ("Unchallenged findings of fact are binding unless the contrary is established as a matter of law or there is no evidence to support the findings.").

[25]Because the trial court did not identify which, if any, tracing method it relied upon—and because Wife did not request additional findings asking the court to specify what tracing method it relied upon—we can rely upon any theory of tracing that is supported by the record.  *See Ahrenhold v. Sanchez*, 229 S.W.3d 541, 543 (Tex. App.—Dallas 2007, no pet.) ("[A]lthough she timely requested findings of fact and gave notice of past due findings, [the appellant] never submitted to the trial court any more specific additional or amended findings.  Accordingly, she has waived any complaint with respect to the adequacy of the trial court's findings of fact and conclusions of law."); *see also Allen v. Allen*, 717 S.W.2d 311, 313 (Tex. 1986) ("[W]hen findings of fact[] and conclusions of law are not requested or filed, appellate courts must affirm the judgment of the trial court on any legal theory that finds support in the evidence.").

"Texas law recognizes multiple methods for tracing separate property funds in commingled accounts, and the separate character of purchases made with those funds."  *In re Marriage of Moore*, No. 12-22-00286-CV, 2023 WL 3369399, at *6 n.2 (Tex. App.—Tyler May 10, 2023, no pet.) (mem. op.) (discussing the "clearinghouse" method of tracing assets); *Richard v. Towery*, No. 01-11-00132-CV, 2013 WL 1694861, at *7–11 (Tex. App.—Houston [1st Dist.] Apr. 18, 2013, no pet.) (mem. op.) (utilizing the line-item method of tracing assets); *Smith v. Smith*, 22 S.W.3d 140, 147 n.5 (Tex. App.—Houston [14th Dist.] 2000, no pet.) (op. on reh'g) (applying the "community-out-first" method of tracing but discussing the "separate-out-first" method); *Ceasar v. Ceasar*, No. 09-99-138-CV, 2000 WL 639892, at *2 (Tex. App.—Beaumont May 18, 2000, no pet.) (approving the use of the "community-out-first" method of tracing assets); *Hill v. Hill*, 971 S.W.2d 153, 159 (Tex. App.—Amarillo 1998, no pet.) (utilizing the minimum-sum-balance method of tracing assets); *Newland v. Newland*, 529 S.W.2d 105, 109 (Tex. App.—Fort Worth 1975, writ dism'd) (utilizing "repayment" method

22

*S.T.*, 2023 WL 2607751, at \*12; *Chi Hua Lee*, 2019 WL 3024478, at \*4; *Boyd*, 131 S.W.3d at 612; *see also In re Marriage of Nash*, 644 S.W.3d 683, 697 (Tex. App.— Texarkana 2022, no pet.) (stating that "[c]ourts have no difficulty in following separate funds through bank accounts"). Thus, we hold that the trial court did not abuse its discretion by finding that the Texas Property is "mixed" separate and community property. *See Hamilton*, 2020 WL 6498528, at \*3; *Logsdon*, 2015 WL 7690034, at \*3.

Wife also argues that the trial court abused its discretion because "no evidence was admitted that the [Texas Property] was intended to be anything but community property." To support that argument, Wife points to the fact that, following the parties' marriage, payments were made on the Florida Property from community funds. But because the deed to that property remained in Husband's name, any payments made from community funds did nothing to change the underlying separate-property character of the Florida Property. *See Jordan*, 264 S.W.3d at 856. Moreover, "[i]ntent is a fact question uniquely within the realm of the trier of fact because it so depends upon the credibility of the witnesses and the weight to be given to their testimony." *Spoljaric v. Percival Tours, Inc.*, 708 S.W.2d 432, 434 (Tex. 1986). And, here, the trial court—acting as the factfinder—heard evidence pertaining to Husband's separate property from the sale of the Florida Property and pertaining to the liquidation of his Darden retirement benefits and heard evidence regarding the use

of tracing assets); *DePuy v. DePuy*, 483 S.W.2d 883, 887–88 (Tex. App.—Corpus Christi 1972, no writ) (utilizing exhaustion method of tracing assets).

23

of that separate property to fund the purchase of the Texas Property. After viewing the evidence in the light most favorable to the trial court's ruling and indulging every reasonable presumption in favor of the trial court's ruling, we conclude that there is sufficient evidence indicating that the Texas Property was intended to be of "mixed" character.

We overrule Wife's second issue.[26]

## C. Wife's Complaints Regarding the Trial Court's Amended Findings of Fact and Conclusions of Law

In her third issue, Wife complains—through six sub-issues—that the trial court's amended findings of fact and conclusions of law are not supported by evidence of probative force. Wife specifically complains about the trial court's findings that: (1) the community estate's interest in the Texas Property is only $209,963.98; (2) the community's equity in the Texas Property should be reduced by closing costs of 8% for the sale of that property—i.e., $103,703.04; (3) Husband has a separate property interest of 16.85% in the Texas Property; (4) the value of Husband's separate property interest in the Texas Property is $218,424.53; (5) Wife's "[L]uxury

---

[26]In her brief, Wife contends that it is "illogical[]" that the trial court found that the Texas Property was of "mixed" character while at the same time denying Husband's separate property reimbursement claim. Wife cites no law to support her argument, and we find nothing "illogical" about the trial court's actions in this respect—considering the "mixed" nature of the Texas Property in its division of the parties' community estate while denying Husband's reimbursement claim.

[A]pparel [I]tems" are community property in whole or in part; and (6) Wife's attorney's fees are only $31,538.85. We will discuss each of these sub-issues in turn.

## 1. The Community Estate's Interest in the Texas Property

In the trial court's property division spreadsheet that was attached to its amended findings of fact and conclusions of law, the trial court found that the community estate's interest in the Texas Property was valued at $209,963.98. In an argument section spanning only one paragraph, Wife attacks that finding. Wife's argument pertaining to this sub-issue is based entirely on the same argument she made with respect to her second issue—that the community property presumption prevails with respect to the Texas Property because Husband failed to trace his separate property by clear and convincing evidence. But because we have already rejected Wife's argument pertaining to this sub-issue in our discussion of Wife's second issue, we overrule this sub-issue.[27]

## 2. Closing Costs of 8% for the Sale of the Texas Property

In the trial court's property division spreadsheet that was attached to its amended findings of fact and conclusions of law, the trial court found that the Texas Property would have closing costs of 8% of the total sales price if sold—i.e.,

---

[27]To the extent that Wife is attempting to complain about the trial court's finding based on some factor other than the arguments advanced in her second issue, we hold that said complaint is inadequately briefed. *See* Tex. R. App. P. 38.1(i) (requiring a brief to contain "a clear and concise argument for the contentions made, with appropriate citations to authorities and to the record").

$103,703.04 in closing costs. In attacking that finding, Wife complains that there is no evidence that the Texas Property would be sold and no evidence of what the closing costs would be in the event of a sale. Thus, Wife contends that there is "no probative evidence support[ing] a reduction of the community's equity in [the Texas Property] by costs of sale." We agree.

Here, no evidence was admitted at trial indicating that the Texas Property was to be sold. To the contrary, Husband testified that he wanted to keep the Texas Property and that he desired that the trial court award him the Texas Property. And that is what the trial court ultimately did. It awarded Husband the Texas Property as part of its just and right division of the parties' marital estate, and it found him liable for the Mortgage on the Texas Property.

In his brief, Husband argues that the closing costs are appropriate because "the trial court ordered [that the Texas Property] be sold if [Husband] did not take [Wife's] name off the mortgage." Husband points to the language in the decree where the trial court ordered that Husband "shall refinance [the Texas Property] within 120 days if [Wife] is named as a borrower on the Real Estate Note for the purchase of [the Texas Property] for the purpose of removing [Wife] as an obligor on the real estate note" and ordered that the Texas Property "shall be sold" in the event that Wife "is not removed from any mortgage indebtedness on [the Texas Property]." Husband testified, however, that Wife's name was never on the Mortgage on the Texas

26

Property.[28]  Thus, the referenced order obligating Husband to sell the Texas Property if Wife's name was not removed from the Mortgage on the Texas Property was not triggered because Wife's name was not on that mortgage.  Given the foregoing, we hold that the trial court abused its discretion by finding that the Texas Property would have closing costs of 8% of the total sales price if sold—i.e., $103,703.04 in closing costs—because there is not sufficient evidence to support that finding.[29]  We further hold that the trial court abused its discretion by reducing the value of the community estate based on the finding.

We sustain this sub-issue.

### 3. The Percentage of Husband's Separate Property Interest in the Texas Property

In the trial court's property division spreadsheet, the trial court found that Husband has a separate property interest of 16.85% in the Texas Property.  In an argument section spanning only one paragraph, Wife attacks that finding.  Wife's arguments pertaining to this sub-issue are based on the same arguments she made with respect to her second issue—that the Texas Property is presumptively community property, that Husband failed to trace his separate property by clear and

---

[28]The "Uniform Residential Loan Application" pertaining to the Mortgage on the Texas Property lists Husband as the "Borrower" and does not list anyone as a "Co-Borrower."

[29]We also note that the record does not contain any evidence substantiating the amount of closing costs.

convincing evidence, and that there is no evidence that the parties intended the Texas Property to be Husband's separate property. But because we have already rejected Wife's arguments pertaining to this sub-issue in our discussion of Wife's second issue, we overrule this sub-issue.[30]

### 4. The Value of Husband's Separate Property Interest in the Texas Property

In the trial court's property division spreadsheet, the trial court found that the value of Husband's separate property interest in the Texas Property is $218,424.53. In an argument section spanning only one paragraph, Wife attacks that finding. Wife's arguments pertaining to this sub-issue are once again based on the same arguments she made with respect to her second issue—that the Texas Property is presumptively community property, that Husband failed to trace his separate property by clear and convincing evidence, and that there is no evidence that the parties intended the Texas Property to be Husband's separate property. But because we have already rejected Wife's arguments pertaining to this sub-issue in our discussion of Wife's second issue, we overrule this sub-issue.[31]

---

[30]To the extent that Wife is attempting to complain about the trial court's finding based on some factor other than the arguments advanced in her second issue, we hold that said complaint is inadequately briefed. *See* Tex. R. App. P. 38.1(i).

[31]To the extent that Wife is attempting to complain about the trial court's finding based on some factor other than the arguments advanced in her second issue, we hold that said complaint is inadequately briefed. *See id.*

### 5. Wife's Luxury Apparel Items

In the trial court's property division spreadsheet, the trial court awarded Wife certain "Luxury Apparel Items" valued at $50,000 that the trial court found were the parties' community property.[32] Wife argues that "no evidence supports the trial court's finding that the '[L]uxury [A]pparel [I]tems' are community property or that they have a value of $50,000." We disagree.

At trial, Husband was shown photographs depicting "high-end purses and jewelry," along with "luxury shoes" and other apparel items (collectively, the Luxury Apparel Items). Husband testified that the Luxury Apparel Items were "purchased during the marriage."[33] Husband stated that the "[l]owest possible fire sale" value for the Luxury Apparel Items was $80,000.

Wife's mother, Bibi Ramroop, testified regarding the Luxury Apparel Items. Ramroop stated that she worked at Chanel and was able to obtain "designer clothing, handbags, [and] purses" for free or at a discounted rate. She testified that she often loaned Wife handbags and that she would swap out the handbags with Wife on her visits to Texas. Ramroop also said that she had given Wife shoes, jewelry, makeup, and clothing, noting that she used to work at Saks Fifth Avenue and got a "very

---

[32]The trial court also found that certain other "Luxury Apparel Items" were Wife's separate property, and it placed a $20,000 value on those items.

[33]At a different point of the trial, Husband stated that the Luxury Apparel Items were "acquired" during the marriage.

good . . . discount there." Ramroop admitted that Husband had bought Wife a Chanel handbag and had possibly bought Wife other "designer purses, handbags, [and] jewelry," but she did not know "exactly what" Husband had purchased for Wife. Ramroop also stated that Wife had not purchased any of the Luxury Apparel Items.

Wife stated that she had not purchased any of the Luxury Apparel Items, but she admitted that Husband had purchased a "few" of the items. She mentioned generally that Husband had bought her "a purse" and "a watch" as gifts, although she did not specifically identify those items. She later testified that none of the Luxury Apparel Items were community assets, noting that the items were either gifts or were items loaned by her mother.

As the Luxury Apparel Items were possessed by Wife during or on dissolution of the marriage, it was Wife's burden to establish that the items were her separate property. *See* Tex. Fam. Code Ann. § 3.003(a). While Wife testified generally that the Luxury Apparel Items had either been gifted to her or loaned by her mother, she did not specify which items had been gifted or which items had been loaned apart from generally stating that Husband had bought her "a purse" and "a watch." In contrast, Husband testified that the Luxury Apparel Items were "purchased during the marriage," and he stated that the "[l]owest possible fire sale" value for the Luxury Apparel Items was $80,000. Based on that evidence, the trial court could have chosen to believe Husband's testimony and disbelieve Wife's and her mother's testimony. *See Hamilton*, 2020 WL 6498528, at *4 (holding that the factfinder "is in the best position

30

to observe the witnesses and their demeanor" and "may choose to believe one witness over another"). After viewing the evidence in the light most favorable to the trial court's ruling and indulging every reasonable presumption in favor of the trial court's ruling, we conclude that there is sufficient evidence indicating that some of the Luxury Apparel Items were community property with a value of $50,000.

We overrule this sub-issue.

### 6. Wife's Attorney's Fees

In a divorce case, the trial court has equitable power to award attorney's fees as a part of the just and right division of the marital estate. *J.M. v. C.M.*, No. 02-19-00277-CV, 2021 WL 832655, at *5 n.15 (Tex. App.—Fort Worth Mar. 4, 2021, no pet.) (mem. op.); *Mandell v. Mandell*, 310 S.W.3d 531, 541 (Tex. App.—Fort Worth 2010, pet. denied); *see Roman v. Roman*, No. 09-14-00020-CV, 2015 WL 8476117, at *3 (Tex. App.—Beaumont Dec. 10, 2015, no pet.) (mem. op.) ("Because attorney's fees are a debt incurred by the marital estate, trial courts are allowed to award fees in making a just and right division of a divorcing couple's marital estate."). Here, in the divorce decree, the trial court ordered that, "[t]o effect[uate] an equitable division of the estate of the parties and as a part of the division . . . , each party shall be responsible for his or her own attorney's fees, expenses, and costs incurred as a result of legal representation in this case."

In the trial court's property division spreadsheet, the trial court found that the debt caused by Wife's attorney's fees was $31,538.85. In this sub-issue, Wife argues

31

that "[t]he trial court abused its discretion in finding that the amount of debt owed by Wife for her attorney's fees was only $31,538.85," arguing that "[t]he undisputed evidence showed that Wife owed approximately $85,000.00 in attorney's fees."

But because we have sustained Wife's sub-issue relating to closing costs—and because we will ultimately sustain her first issue because of the sub-issue relating to closing costs, a holding which necessitates a remand to the trial court—we need not reach the merits of Wife's sub-issue relating to attorney's fees. Instead, we must vacate the award of attorney's fees and remand that issue to the trial court. *See Kelly v. Kelly*, 634 S.W.3d 335, 370 (Tex. App.—Houston [1st Dist.] 2021, no pet.) ("Because we hold that the trial court committed reversible error with respect to characterizing portions of [the appellant's] separate property as community property, an error which requires remand of the case to redivide the parties' marital estate, we vacate the award of attorney's fees to [the appellee]."); *Rodgers v. Perez*, No. 03-16-00313-CV, 2017 WL 4348170, at *3 (Tex. App.—Austin Sept. 27, 2017, no pet.) (mem. op.) (remanding property division for reconsideration and stating that "[t]his includes the district court's award of attorney's fees because the district court expressly made the award as part of its division of the community estate"); *Henry v. Henry*, 48 S.W.3d 468, 481 (Tex. App.—Houston [14th Dist.] 2001, no pet.) ("[T]o the extent the [attorney's] fees were awarded as part of the division of the property, the trial court should reexamine the award on remand as a part of making a just and right division of the property.").

We sustain this sub-issue.

**D. Wife's Complaint that the Trial Court's Property Division Is Manifestly Unfair**

In her first issue, Wife argues that the trial court abused its discretion by "making a division of community property that is manifestly unfair in favor of Husband."

**1. Applicable Law**

In a divorce decree, the trial court shall order a division of the parties' community estate "in a manner that the court deems just and right, having due regard for the rights of each party and any children of the marriage." Tex. Fam. Code Ann. § 7.001. Each spouse has the burden to present sufficient evidence of the value of the community estate to enable the trial court to make a just and right division. *Gonzalez v. Gonzalez*, 679 S.W.3d 221, 226 (Tex. App.—Houston [1st Dist.] 2023, no pet.); *Cervenka v. Cervenka*, 672 S.W.3d 814, 818 (Tex. App.—Corpus Christi–Edinburg 2023, no pet.). A trial court is not required to divide the community estate equally, although it must be divided equitably. *Gonzalez*, 679 S.W.3d at 226; *M.G. v. T.G.*, No. 02-21-00433-CV, 2023 WL 2178762, at *5 (Tex. App.—Fort Worth Feb. 23, 2023, no pet.) (mem. op.).

**2. Analysis**

Wife argues that the trial court's property division is manifestly unfair based on several purported errors by the trial court: (1) the trial court's finding that the Texas Property is "mixed" separate and community property; (2) the trial court's finding that

33

some of the Luxury Apparel Items were community property; and (3) the trial court's finding that the Texas Property would have closing costs of 8% of the total sales price if sold—i.e., $103,703.04 in closing costs. While we have rejected the first two of those arguments, we have sustained the argument pertaining to closing costs.

And because the amount of the closing costs—$103,703.04—is more than a de minimis amount given the context of the parties' community estate, we sustain Wife's first issue and remand the case back to the trial court for a new property division. *See Shalit v. Shalit*, No. 04-19-00736-CV, 2022 WL 789347, at *1 (Tex. App.—San Antonio Mar. 16, 2022, pet. denied) (mem. op.) ("We affirm the parties' divorce, but because the trial court's mischaracterization of some of the community property was of sufficient magnitude to affect the just and right division, we reverse the trial court's division of the community estate."); *Wolf v. Nygard*, No. 05-19-01214-CV, 2021 WL 3234348, at *2 (Tex. App.—Dallas July 29, 2021, no pet.) (mem. op.) ("The amount of $204,896.64 is not a de minimis amount in the context of the community estate. Accordingly, the proper disposition is to remand the entire community estate for a new property division."); *Boyd*, 131 S.W.3d at 617 ("[If] property is mischaracterized and the mischaracterization is of such magnitude that it affects the just and right division of the community estate, we must remand the entire case to the trial court for a just and right division based upon the correct characterization of the property."); *cf. Monroe v. Monroe*, 358 S.W.3d 711, 718 (Tex. App.—San Antonio 2011, pet. denied) (op. on reh'g) (construing as de minimis the trial court's mischaracterization of

34

separate property as community property where the value of the mischaracterized separate property was "less than two percent of the entire estate").

## IV. CONCLUSION

We have sustained Wife's first issue, overruled her second issue, and overruled all of the sub-issues of her third issue with the exception of the sub-issues concerning closing costs and attorney's fees, which we have sustained. Those holdings require us to reverse the portion of the divorce decree relating to the division of the parties' property—specifically including the trial court's award of attorney's fees—and we remand the case for further proceedings consistent with this opinion. We affirm the remainder of the divorce decree.

/s/ Dana Womck

Dana Womack
Justice

Delivered: October 17, 2024